# FREDERICK BARTLETT *et al.*

*v.*

# THE BOARD OF EDUCATION OF FREEPORT SCHOOL DISTRICT.

1. SCHOOL TREASURER—*bond—approval.* Where the board of education of a school district elected a treasurer, required him to give bond, which he did, with security, and it was received by the board and acted upon by the parties: *Held,* to be a sufficient approval, without any such indorsement on the bond, or any entry thereof on their records. Such acts imply an approval. The provision of the statute requiring an approval, is merely directory. It was so held in *Green* v. *Wardell,* 17 Ill. 278.

2. In such a case, it is not material that the board of education did not fix the penalty of the bond. If executed in a particular sum and not objected to, but received and acted upon, that is sufficient, and it is not error to sustain a demurrer to a plea which sets that up as a defense.

3. TREASURER OF SCHOOL DISTRICT—*successor—demand of money by.* Under the statute creating a school district, it authorized the treasurer to receive all moneys of the district, and when the successor to a treasurer was appointed, giving bond to the satisfaction of the board, he may make a demand of his predecessor for all moneys in his hands belonging to the district, and such a demand, under the conditions of his bond, fixes the liability of his predecessor and his sureties.

4. BOND—*approval—parol evidence.* Parol evidence is admissible to prove that a board of education had, in fact, approved the bond of their treasurer, although it was not entered on the minutes of the proceedings of the board.

5. EVIDENCE—*account book.* In a suit on the bond of a treasurer of a school board, against him and his sureties, for money received and not accounted for by him, it is not error to admit his account book, as treasurer, to show the amount of money received by him, and this, too, although the

entries were made by his clerk, and especially so when the treasurer swore that there was in his hands a sum equal to that shown by his books.

6. BOND—*non est factum, filling blanks.* The treasurer's bond, in this case, was written by him, and he left a blank for the names of his sureties and the amount of the penalty. The sureties filed a plea of *non est factum,* and it appeared on the trial that the sureties signed the bond, and the blank for the amount of the penalty was subsequently filled up by the treasurer and delivered to the board, who had no notice that the blank had been filled after the bond was signed. The sureties never gave notice to the board that the bond had been altered, and the treasurer received large sums of money by virtue of having given the bond, and afterwards became a defaulter: *Held,* that if not a fraud perpetrated by the sureties, it is unfair and unjustifiable in morals, and would, if allowed, be an ungracious defense, and that the bond did not become void.

7. AUTHORITY—*to fill blanks—when presumed.* When commercial paper and unsealed agreements are signed with blanks, and thus delivered, and the blanks are subsequently filled, the law presumes that authority to fill them was given at the time of their delivery.

8. BOND—*ratification.* Where sureties know that there is such a blank, and they sign the instrument and fail to notify the obligees that they regard the bond as void, and they know that, by filing the bond, the treasurer would obtain money, it will be inferred that they ratified the act, rather than that they were intending to aid the treasurer to perpetrate a fraud on the obligees.

9. In such a case, where the sureties, after finding that their principal had appropriated the fund, took mortgages and other securities, it is evidence from which a jury may infer that authority had been given, or that a ratification had been made.

10. Where an obligor intends to, and does acts, which fully recognize the validity of a bond, it need not be present and formally delivered to constitute a valid ratification.

11. INSTRUCTION. An instruction which informs the jury that if they find certain facts, which, if true, constitute a defense, to be true, then they should find the issue in a particular manner, does not find the facts, and is unobjectionable.

12. Where an instruction asserts a correct legal proposition, applicable to the facts of the case, it is proper for the court to give it; and if the other party desires to have its operation limited to a particular point in the case, he should ask an instruction for the purpose.

APPEAL from the Circuit Court of Stephenson county ; the Hon. WILLIAM BROWN, Judge, presiding.

Messrs. F. C. INGALLS and J. A. CRAIN, for the appellants.

Messrs. BAILEY & NEFF, and Messrs. BLANCHARD, BARTON & BARNUM, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of debt, brought by appellees in the Stephenson circuit court, against appellants, with Esrom Mayer, on his official bond as treasurer of the Freeport school district. At the December term, 1870, a trial was had by the court and a jury, resulting in a judgment in favor of appellees for $7,351.36, from which this appeal is prosecuted.

It appears that Mayer, on the 11th day of June, 1869, was elected treasurer of the district by the board of education for the ensuing year, and was required to give bond with surety, as such treasurer, in the sum of $20,000 ; that, before entering upon the duties of the office, he filed the bond on which suit was brought, signed by him as principal, and Bartlett, Clayton, Little and McCall, as sureties ; that he thereupon entered into the office and upon the discharge of its duties, and received, at divers times, moneys to a large amount. At the expiration of his term, he failed to pay over to his successor the funds in his hands as such treasurer, belonging to the board of education, which the jury found to be the amount of their verdict, and for which this judgment was rendered.

It is first urged, that the court below erred in sustaining a demurrer to appellants' second and third pleas. The second avers that the bond, upon which the suit was instituted, was never approved by the board of education. The first count of the declaration avers, that the bond was received by the board, and if so, the bond required no further approval. If received and acted upon by the parties, that was sufficient, without a formal approval entered upon the bond itself, or the record of their proceedings. The statute creating the district requires the bond to be in such sum as the board shall determine, but as nearly double the sum that may be in his hands at one time

as could be ascertained, to be approved by the board. The purpose of the provision requiring an approval was, that the board should have the power to reject any bond offered by the treasurer, unless the security should be sufficient; to give them the power to reject a bond, unless sufficient to secure the district from loss; to prevent the treasurer from obtaining the money on a defective bond or insufficient security.

Numerous decisions of other courts hold that, in such cases, the provision of the statute is merely directory. But the question is settled in this State, by the case of *Green* v. *Wardell*, 17 Ill. 278. In that case it was held that, when the bond was executed by the parties and delivered to the clerk for his approval, it became obligatory upon them, unless it was disapproved by him; that his mere non-action did not deprive the officer of the power to act as such. It was also held that, if the clerk was not satisfied with the sureties, he should have disapproved the bond so that the officer might find other sureties; that, if this was not done, upon principle, the bond became obligatory to secure the rights of the public, and the bond was held to be binding on the parties from the moment it was delivered to the clerk. No one would suppose, had the board of education sued the treasurer to recover the money he retained for his fees, upon the ground that he was not properly in office because his bond was not formally approved, that he would not have been protected, or that they could have recovered. Being filed, not rejected, and treated by all parties as approved, the effect is the same as though an approval had been indorsed. The want of such action has not, in the slightest degree, increased the liabilities of the obligors, or in the remotest degree occasioned them injury.

The third plea denies that the board required the treasurer to give bond in the penal sum of $20,000. We fail to perceive that the averment in the declaration was material, and if not, its being traversed by the plea would have presented an immaterial issue. The law only declares that the treasurer shall execute to the board an official bond, with good and sufficient

securities, to be approved by them, in such sum as they might determine. When the bond was presented in the penalty of $20,000, with the sureties, and received by them, the law was complied with as to the amount. As was said in *Green* v. *Wardell, supra,* if the bond was not satisfactory, it was the duty of the officer to reject it, and so it was the duty of the board, that the treasurer might obviate the objection. It did not matter whether the board had, by resolution or otherwise, fixed the penalty of the bond before it was presented, as by receiving it, and the parties treating it as a valid instrument, the requirements of the law were substantially performed, and all parties as fully bound by it as though the penalty had been previously and formally fixed by the board.

It is next urged, that the court below erred in admitting improper evidence of a demand on the treasurer to pay over the money in his hands, belonging to the board, to his successor in office. Under the statute, the treasurer is entitled to receive and hold all moneys belonging to the board, and Mayer's successor, when he was elected and had given bond to the satisfaction of the board, became the treasurer, and Mayer ceased to be any longer treasurer, and he then was bound, under the condition of his bond, to pay whatever sum was in his hands, to his successor. And on a demand by the latter, who was legally entitled to receive it, that was all that was required to fix his liability. Had he paid to his successor, he would have been protected by the law and the condition of his bond, without any notice from the board, or order from them to pay to his successor. If anything was done by way of giving notice beyond the demand from his successor, it was immaterial, and proof thereof was unnecessary, and could not have prejudiced the rights of appellants.

As to the parol evidence that the bond was approved in fact, but no record made of such approval, we fail to perceive that it was erroneous. Corporations may, and usually do, keep a record of their proceedings, but it is not always necessary to their validity that they should be recorded. Had this been an

agreement to deliver to the board a quantity of fuel, or to perform labor on their school edifice, or its grounds, and appellants had sued for a breach of contract, they nor any one else would suppose that they could not recover because the agreement had not been reduced to writing, or spread upon their journals. Parol proof would be, in such a case, fully competent to establish the liability of the parties by showing what was said and done. In *Ryan* v. *Dunlap,* 17 Ill. 40, it was held, that parol evidence was admissible to prove a vote of the directors of a bank to accept one security in the place of another, where no record had been made of the vote. If that could be so proven, we are at a loss to understand why the same may not be done by parol, to show the approval of an official bond to a board of education. The rights of the people, and their money raised for the purposes of education, can not be lost by the carelessness or incompetency of officers in omitting to make such entries.

Nor do we perceive any objection to introducing the account books of the treasurer, by which to ascertain the amount of funds which came to his hands. Had Mayer made admissions of the receipt of school funds, we presume no one would doubt such admissions would be legitimate evidence both against him and his sureties, and the entries made by him, or under his directions, would be equally binding, as they are undeniably as deliberately made as had they been oral ; and having constant access to his account book, we must presume he was familiar with all of the entries it contained, and must have been aware of the entries made by his clerk ; and if so, the book was evidence. But this all became immaterial, inasmuch as Mayer, himself, on the stand, swore there still remained in his hands the precise sum found by the jury, and he had previously admitted the same sum to his successor. It is thus rendered clear, that any evidence of what his book contained could not, and did not, in the slightest degree, prejudice the rights of appellants.

24—59TH ILL.

Having disposed of these preliminary questions, we now come to the important questions of the case. They arise under the plea of *non est factum*, sworn to by appellants. The facts are, that the bond is, all but the signatures, in the handwriting of Mayer; that the board had fixed the penalty at $20,000, and informed him of the fact; that he drew the bond blank as to the names of the sureties and the amount of the penalty; it was signed with the blank as to the amount unfilled; that the amount was subsequently inserted, but before it was delivered; that he did not inform any member of the board of that fact, nor does the evidence show that the board, or any member of the same, had the slightest reason to suspect that the bond was not written in full before it was signed by each surety. The bond was received, filed, and Mayer entered upon the duties of the office, received large sums of money on the faith that the bond was good, without either of appellants ever intimating to the board that they regarded the bond nugatory; and now, when Mayer appropriates the money to his own use and proves a defaulter, all by means of their signatures to the bond, they come forward and claim that it is, and always had been, void. If this is not a fraud, it is certainly unfair and unjustifiable in morals, on the part of appellants. If it is a defense at law, it is an ungracious one to say the least.

It has been generally held, that where a party signs a bond in blank, and the obligee fills it, or knows that it had been filled without the assent of the obligor, the instrument is void and can not be enforced, and such is the doctrine of this court. But the decisions of other courts are by no means uniform. Anciently the doctrine was more rigid than is now held by the courts. The general rule is, that when a person executes a note or bill of exchange in blank, either as to the name of the payee or the sum to be paid, and delivers it, there is an implied authority to fill the blanks when it is negotiated. *Ward* v. *Young*, 21 Ill. 223. And in that case it was held, that when a surety signed a note and placed it in the hands of the

principal, with the agreement that other persons should sign it as sureties, and the note would not be delivered until thus signed, but the other signatures were not obtained, and the note was delivered to the payee without notice of the agreement, the surety could not set up the fraud practiced upon him by his principal against the innocent payee. Some decisions hold, that single bonds for the payment of money, as also penal bonds, when signed in blank, may, in like manner, be filled and become binding, on the presumption that it was authorized by the obligor. *Wiley* v. *Moore,* 17 Serg. and Rawle, 438; *Knapp* v. *Matthy,* 13 Wend. 587; *Boardman* v. *Grove,* 1 Stewart, (Ala.) 517; *State* v. *Dean,* 40 Mo. 464; *Com. Bank of Buffalo* v. *Kartright,* 22 Wend. 348; *Sthal* v. *Berger,* 10 Serg. and Rawle, 170; *Sigfield* v. *Sevan,* 6 ib. 308; *Bank* v. *Curry,* 2 Dana, 142; *Tixira* v. *Evans,* 1 Anstruther, 229. Numerous other decisions might be quoted to the same effect, if necessary, to show that the ancient common law rule has been greatly modified.

We feel fully justified in holding, that where a bond, executed as this was, and delivered to the obligee and accepted by him, without notice of any change by filling the blanks, it may be inferred that the sureties authorized the change, and the instrument will be binding. This is the rule announced in *Smith* v. *The Board of Supervisors, post,* p. 412.

But, independent of the question of authority to fill the blanks before the bond was delivered, the question arises, whether the sureties did not ratify its execution. Two of them swear they knew of the blanks when they signed it, and it may be safely inferred that the others were cognizant of the fact, as men usually inform themselves of the contents of such instruments before executing them. They knew it was intended to be used as an effective obligation, and to indemnify the district from loss in case Mayer should become a defaulter; that the design was to enable him to get the custody of this fund. We will not presume these sureties intended to aid Mayer to perpetrate a fraud upon the board, by palming upon them

an invalid instrument, when there was nothing to arouse their suspicions that the bond was worthless. The sureties did not communicate to the board the fact that they executed the obligation in blank, until Mayer became a defaulter, and the question as to their liability had arisen. We will not indulge the presumption that appellants intended, deliberately, to perpetrate so gross a breach of good faith and fair dealing.

In such a case, it is more reasonable to believe that appellants authorized Mayer to fill the blank, or, knowing all the circumstances, and feeling that honor and good faith required it, they ratified the act. Under these circumstances, it would not require the same amount of evidence to satisfy the minds of fair and intelligent persons that such was the fact, as would be required to prove them guilty of so gross a fraud, or that Mayer was guilty of forgery in filling up a blank bond without authority, which, it is contended, was as inoperative as though the paper was blank upon which it was written, so as to give it the semblance of a valid and operative instrument. In fact, before the jury would suppose that Mayer had committed such a crime, and that appellants knowingly placed it in his power to do so, for that purpose, they would not require plenary proof that the necessary authority was given, or that the act was subsequently ratified; but slighter evidence would be convincing.

So far as we can see, from the record, there is no positive or direct proof that authority was given to fill the blank, and no other circumstantial evidence than arises from the facts which attended its execution and delivery. What that amounted to, was a question for the consideration of the jury, and, in connection with the standing of the parties in the community, may have been entitled to considerable weight.

But, it appears that appellants did not remain passive, but as soon as they found that Mayer had dishonestly appropriated the money, they proceeded to obtain mortgages to indemnify them against loss. This, with business men, is not intended, nor is it regarded, as an idle ceremony. It is significant, and

usually implies a belief of liability, either already or intended to be incurred. If they knew that the bond was signed in blank, as we presume they did, and they had not given authority to fill it, they must have known that it was worthless, and why did they begin to make efforts to secure themselves? We must conclude that it was because they had authorized Mayer to fill the blank, or intended to perform the obligation of the bond, as, some of the witnesses say, a part of them said they did, when negotiating for a settlement of the matter. This, whilst it is not clear and positive proof, is, we think, a strong circumstance tending to prove a ratification, or authority when the signatures were attached. And this question was fairly submitted to the jury by the instructions, which indicate that the ground mainly relied on in the court below, for a recovery, was a ratification. And there can be no pretense, that appellants were not apprised of the facts when the security and indemnity were taken. They knew how they had executed the bond; that it had been filed; that Mayer had become the treasurer and received the money by using the bond; that he had used the money, and they must have supposed that they then were, or they intended to become, liable. We think, under all of the circumstances, this evidence was sufficient to warrant the finding on this branch of the case.

The objection to appellees' first instruction is not well taken. It commences by telling the jury, that if they find certain facts from the evidence, and the second clause directs them, if they further find other facts, then they should find for the plaintiffs. This, to men of only ordinary capacity, points them to the evidence as the basis of their action. Nor do we see that it assumes any fact that was being controverted. Mayer had testified that he was indebted, and the indebtedness in some amount was not controverted.

It is contended, that the second instruction is erroneous, in telling the jury that if appellants took from Mayer security to indemnify them from loss, as his sureties, and they, at the time, knew that the word "twenty" had been written in the

bond after it was signed, this was evidence tending to prove a ratification. In this, we can see no objection. The evidence manifestly tended to prove that fact, and had the court refused to admit it to prove the fact, it would have been error, for which the judgment, had it been adverse to appellees, might no doubt have been reversed. No objection is seen to the third of appellees' instructions. It announces a correct principle of law, and had appellants desired that it should be limited to particular facts, they should have asked an instruction for that purpose.

The fourth of appellees' instructions was based on the evidence, and no objection is perceived to the legal proposition it announces. What we have already said in reference to Mayer's liability to pay the money to his successor, disposes of the objection to the fifth instruction.

It is objected, that the court erred in refusing to give two instructions asked by appellants. We do not understand that, to ratify a bond which is invalid when delivered, it is necessary that the bond should be present, and a formal delivery made. But the first of these instructions asserts that such a delivery is necessary to a valid ratification. We have already seen that it was fairly a question for the jury to say, whether the taking of the mortgages as an indemnity amounted to a ratification. And this instruction asserts that it was not, and hence it was properly refused. A careful examination of the entire case fails to disclose any error for which the judgment of the court should be reversed, and it is affirmed.

*Judgment affirmed.*