Gage et al. v. City of Chicago.

# DAVID A. GAGE ET AL.

## v.

# THE CITY OF CHICAGO.

1. SURETIES ON OFFICIAL BOND—OFFER TO SHOW THAT DEFICIT AROSE AT PRECEDING TERM OF OFFICE—ESTOPPEL.—Where the official report of the city treasurer, made under oath, in pursuance of law, showed a balance of cash in his hands belonging to the city, at the commencement of his second term as treasurer, the sureties on his official bond for that term are estopped to deny that the amount as shown by such report was not in fact so held by him.

2. SIGNING BLANK BOND—SUBSEQUENT FILLING IN OF BLANK SPACES—A MATERIAL ALTERATION.—The instrument signed by the sureties was a printed form of a bond, with blanks for inserting in the body the names of the sureties, amount of penalty, office to which the principal was elected and date of election, etc. These blanks were afterwards filled up by the city officials, without the knowledge or consent of the sureties. Held, that as to the sureties the bond was absolutely void.

3. NOTICE TO CITY THAT BOND WAS SIGNED IN BLANK—KNOWLEDGE OF CITY CLERK.—The city clerk was, by the charter of incorporation, made the custodian of the official bonds, and the person to whom they should be delivered, and knowledge by him that the bond in suit was signed in blank, is notice to the city of that fact.

Gage et al. v. City of Chicago.

4. FAILURE TO FILE BOND WITHIN REQUIRED TIME — VACATION OF OFFICE.—The statute requiring the city treasurer to take the oath of office and file his bond within fifteen days after his election, is mandatory, and a failure to file such bond within the required time is a vacation of such office, and relieves the sureties from liability on the bond.

ERROR to the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. WIRT DEXTER, Messrs. LAWRENCE, CAMPBELL & LAWRENCE, and Mr. JOHN N. JEWETT, for plaintiffs in error; contended that the liability of a surety is *strictissimi juris*, and cannot be extended by implication, and cited Miller v. Stewart, 9 Wheat. 680; Leggett et al. v. Humphreys, 21 How. 75; Smith v. United States, 2 Wall. 235; Stull v. Hance, 62 Ill. 52.

The sureties should have been permitted to show that the deficit in fact occurred during the first term of Gage as treasurer: M'Dowell v. Burwell's Adm'r, 4 Randolph, 317; Craddock v. Turner's Admx. 6 Leigh, 116; Nolley et al. v. Calloway County Court, 11 Mo. 287; Myers v. United States, 1 McLean, 493; Farrar et al. v. United States, 5 Pet. 383; United States v. Boyd, 15 Pet. 206; Inhabitants of Rochester v. Randall et al. 105 Mass. 295; Bruce v. United States, 17 How. 437; United States v. Eckfor'ds Ex'rs, 1 How. 257; Patterson v. Inhabitants of Freehold, 38 N. J. 255; State. v. Rhoades, 6 Nev. 352; Mumford et al. v. Overseers, etc. Nottoway, 2 Randolph, 213; County of Mahaska v. Ingalls, 16 Iowa, 85; Bessinger v. Dickerson, 20 Iowa, 261; Vivian v. Otis et al. 24 Wis. 518; Paw Paw v. Eggleston, 25 Mich. 36; Detroit v. Weber, 29 Mich. 24; Bissell v. Saxton et al. 66 N. Y. 55.

It was proper for plaintiffs in error to show that the funds received and charged against the treasurer at the end of his first term, were actually loaned out for the account and benefit of the city, and such evidence was improperly excluded. If such was the fact, it is in the nature of an estoppel *in pais;* C., R. I. & P. R. R. Co. v. City of Joliet, 79 Ill. 25; City of Peoria v. Johnston, 56 Ill. 45; Goodwin v. City of Milwaukee, 24 Wis.; Peck v. Barr, 10 N. Y. 294; Lane v. Kennedy, 13 Ohio St. 42; Commonwealth v. Mittenberger, 7 Watts. 450; Easton et al.

v. N. Y. & L. B. R. R. Co., 24 N. J. Eq. 50; Att'y Gen. v. Sheffield Gas Co. 3 De Gex, M. & Y. 312.

Bonds, with the material parts left in blank, signed by the parties, are absolutely void: Ayer v. Harness, 1 Ham. O. 173; Gilbert v. Anthony, 1 Yerg 69; Wayne v. Governor, 1 Yerg. 149; Byrn v. McClanahan, 6 Gill. & J. 250; Parminter v. Mc-Daniel, 1 Hill. 267; Boyd v. Boyd, 2 N. & McC. 125; United States v. Nelson, 2 Brock. 64; McKee v. Hicks, 2 Dev. 379; Borden v. Southerland, 70 N. C. 528; People v. Organ et al. 27 Ill. 27; Church v. Noble, 24 Ill. 291; Chase v. Palmer, 29 Ill. 306; Sans v. The People, 3 Gilm. 327; Bartlett v. Board of Supervisors, 59 Ill. 364; Ingraham et al. v. Edwards, 64 Ill. 526; Maus v. Worthing, 3 Scam. 26; Bragg v. Fessenden, 11 Ill. 544; Hanford v. McNair, 9 Wend. 55; Blood v. Goodrich, 9 Wend. 67; Clendaniel v. Hastings, 5 Har. 408; McNutt v. McMahon, 1 Head. 98; People v. Kneeland, 31 Cal. 288; Lovett et al. v. Adams et al. 3 Wend. 380; Smith et al. v. United States, 2 Wall. 219; Pawling v. United States, 4 Cranch. 219; Doane v. Eldridge et al. 16 Gray, 254.

The paper, signed in blank by the sureties, and void when it left their hands, did not afterwards become a valid obligation against them: Smith v. Peoria County, 59 Ill. 412; Wild Cat Branch v. Ball et al. 45 Ind. 213; Ward et al. v. Churn, 18 Gratt. 801.

Notice to the city clerk that the bond had been signed in blank, was notice to the city: Angell and Ames on Corporations, § 305; Dillon on Municipal Corporations, § 39; Danville Bridge Co. v. Pomeroy et al. 15 Pa. St. 151; Trenton Banking Co. v. Woodruff et al. 2 Green, 174; Custer v. Tompkins Co. Bank, 9 Pa. St. 27; Wing v. Harvey, 27 Eng. L. & Eq. 140; Porter v. Bank of Rutland, 19 Vt. 410; New Hope, etc. Co. v. Phœnix Bank, 3 N. Y. 156; Selden v. Del. & Hud. Canal Co, 29 N. Y. 634; Fulton Bank v. N. Y. & S. Canal Co. 4 Paige, 127; P. F. W. & C. R'y Co. v. Ruby, 38 Ind. 294; Great Western R'y Co. v. Wheeler, 20 Mich. 419; McEwen v. Montgomery Co. Ins. Co. 5 Lull, 101; Jackson v. Sharp, 9 Johns. 163; McCormick v. Bay City, 23 Mich. 457; Harrington v. School District, 30 Vt. 155; Hayden v. Trempla Co. 10

Gage et al. v. City of Chicago.

Mass. 397; Nichols v. Boston, 98 Mass. 39; Smith v. Board of Water Com'rs, 38 Conn. 208; Field v. The Mayor, 6 N. Y. 179; Hall v. City of Buffalo, 40 N. Y. 193.

Notice to the assistant corporation counsel of the defects in the execution of the bond, was notice to the city: Williams v. Tatnall, 29 Ill. 553; Allen v. McCalla, 25 Iowa, 464; Bierce v. Red Bluff Hotel Co. 31 Cal. 165.

The statute declaring that a failure to file the bond within the time required, vacated the office and terminated all liability on the bond, is mandatory and demands strict compliance: Supervisors, etc. v. The People, 7 Hill, 511; Wheeler v. City of Chicago, 24 Ill. 107; Kane v. Footh, 70 Ill. 587; Pearse v. Morris, 2 A. & E. 96; Hurford v. City Omaha, 4 Neb. 351; Ross v. The People, 78 Ill. 375; People v. Percells, 3 Gilm. 59.

The recital in the bond limits and controls its covenants: 2 Smith's L. Cas. 707; Lord Arlington v. Merricke, 2 Saund. 411; Liverpool Waterworks Co. v. Alkinson, 6 East. 507; Mayor, etc. v. Horn, 2 Har. 195.

The evidence offered on the motion for a new trial was of that positive character which entitles the party to a new trial: Crozier v. Cooper, 14 Ill. 139; Ritchey v. West, 23 Ill. 385; Cowan v. Smith, 35 Ill. 416.

Mr. Joseph F. Bonifeld and Mr. Sidney Smith, for defendant in error; argued that if the blanks were filled before delivery, without notice to the city that the bond was signed in blank, it is a valid bond, and cited Bartlett v. Board of Education, 59 Ill. 364; Smith v. Board of Supervisors, 59 Ill. 412; Dair v. United States, 16 Wall. 1; Butler v. United States, 21 Wall. 272.

The bond takes effect only from delivery and acceptance. It could only be accepted by the city council, and when accepted it was in a complete form: People v. Neeland et al. 31 Cal. 288; Burgess v. Lloyd, 7 Md. 178; Brown v. Murdock, 16 Md. 521; Stiles v. Probst, 69 Ill. 382; 2 Washburn on Real Prop. 607.

Knowledge by the city clerk that the bond was signed in blank was not notice to the city of that fact: Parmenter v. McDaniel, 1 Hill (S. C.) 267; Paley on Agency, 266; Dillon

on Municipal Cor. § 176, N. 2; 1 Story's Eq. § 408; Willis v. Valette, 47 Met. ( Ky.) 176; Gould v. Oliver, 2 Scott, 241; Bank of Pittsburgh v. Whitehead, 10 Watts, 397; Custer v. Tompkins Co. Bank, 9 Barr. 27; National Bank v. Norton, 1 Hill, 572.

Signing the bond in blank and delivering to the principal, conferred upon him authority to fill the blanks, and deliver the bond thus perfected as a binding security: Freeman v. The People, 54 Ill. 153; Texira v. Evans, 1 Anstr. 228; Speaker v. United States, 9 Cranch, 28; Smith v. Crooker, 5 Mass. 538; United States v. Nelson et al. 2 Brock. 64; Drury v. Foster, 2 Wall. 24; Butler v. United States, 21 Wall, 272; Inhabitants of South Berwick v. Huntress, 53 Me. 89; State v. Pepper et al. 31 Ind. 76; McCormick v. Bay City, 23 Mich. 457; State v. Peck, 53 Me. 284; State v. Young et al. 23 Minn. 551; Wright v. Harris, 31 Iowa, 272; Wiley v. Moor, 17 Serg. & Raule, 438; Knapp v. Maltby, 13 Wend. 587; Kirwin's case, 8 Cow. 118; Byers v. McClenahan, 6 Gill. & J. 250.

Failure of the treasurer to file his bond within fifteen days after the official declaration of his election, does not *ipso facto* vacate the office: People v. Brewster, 15 Ill. 492; People v. Cummings, 25 Ill. 325; Marbury v. Madison, 1 Cranch, 49; Rex v. Loxdale, 1 Burr, 447; Kerney v. Andrews, 2 Stockt. Ch. 70; State v. Churchill, 41 Mo. 41; People v. Holly, 12 Wend. 480; State v. County Court, 44 Mo. 230; State v. Porter et al. 7 Ind. 204; Giliden v. Towle, 11 Foster, 166; Hartford Ins. Co. v. Walsh, 54 Ill. 168; Speaker v. United States, 9 Cranch, 28; State v. Tower, 7 Rich. (Law) 216; Sprowle v. Lawrence, 33 Ala. 674; Green v. Wardwell, 17 Ill. 278; Shaw v. Havekluft, 21 Ill. 127; United States v. Maurice, 2 Brock, 96.

Testimony offered by defendants to impeach the official reports of the treasurer, was properly excluded: Thompson v. Board of Trustees, 30 Ill. 99; United States v. Prescott, 3 How. 578; Inhabitants of Hancock v. Hazzard, 12 Cush. 112; Muzzy v. Shattuck, 1 Denio, 233; State v. Harper, 6 Ohio St. 607; Halbert v. State, 32 Ind. 125; Commonwealth v. McEachron, 33 N. J. 339; Overacre v. Garrett, 5 Lans. 156; Simpkins v. Cobb, 2 Bail. 60; Trimmiar v. Trail, 2 Bail. 480.

The defendants are estopped to deny the truth of such reports:

Hoyne v. Small, 22 Me. 14; Sheldon v. Payne, 3 Selden, 453; Townsend v. Olin, 5 Wend. 207; Matthews v. Dare, 20 Md. 248; Eastman v. Bennett, 6 Wis. 232; Board of Trustees v. Fennemore Cox 242; Cave v. Mills, 7 Hurlst. & N. 913; 3 Kents' Com. 124; Rochester City Bank v. Elwood, 21 N. Y. 90; Belloni v. Freeman, 63 N. Y. 387; Gilbert v. Isham, 16 Conn. 525; Commissioners v. Mayrant, 2 Brev. 228; Seaver v. Young, 16 Vt. 658; Patterson's appeal, 48 Pa. St. 345; Patterson v. Guardians, etc. Belford Union, 38 Eng. L. & Eq. 440; Evans v. Keeland, 9 Ala. 42; McCabe v. Ranay, 32 Ind. 309; Willis v. Gallagher, 46 Pa. St. 205; Bochnur v. Schuylkill Co. 46 Pa. St. 452; United States v. Girault, 11 How. 27; Pinkstaff v. The People, 59 Ill. 148; Morley v. Town of Metamora, 78 Ill. 394.

A judgment against the principal for an official delinquency is conclusive against the surety, both as to the fact of default and its extent: Wiley v. Faulk, 6 Conn. 74; Hobbs v. Middleton, 1 J. J. Marshall, 186; Strovall v. Banks, 10 Wall. 583; Charles v. Hoskins, 14 Iowa, 471; Baker v. Preston et al. 1 Gilmer 235; State v. Grammar, 29 Ind. 530; Barrett v. Copeland, 18 Vt. 67.

The treasurer should account for the interest on the money received: Hughes v. The People, 82 Ill. 78.

Even if the objection to interest items is well taken, this Court may make the proper deduction and enter judgment accordingly: Chicago v. Wheeler, 25 Ill. 478; Amended Practice Act of 1877, §§ 80, 81.

The treasurer is not bound to keep in his hands the identical moneys received. He may choose his own mode of keeping it, and fully discharges his duty when he pays over the amount received to the person, and at the time appointed by law: New Providence v. McEachron, 33 N. J.; Hughes v. The People, 82 Ill. 78; Sims v. Bond, 5 Barn. & Ad. 338.

The city could not give the treasurer authority to loan the funds: Dillon on Municipal Corporations, § 55; Mix v. Ross, 57 Ill. 121; Brady v. New York, 20 How. Pr. 443; Farmers Loan & Trust Co. v. Cornell, 5 Barb. 649; Cowen v. Village of West Troy, 43 Barb. 48.

Nor can it ratify acts of its officers done beyond the scope of their authority: Mayor, etc. v. Reynolds, 20 Md. 1; Hurlbert v.

The State, 22 Ind. 125; Dillon on Municipal Corporations, § 447; The People v. Brown, 67 Ill. 435; Jones v. United States, 18 Wall; Board of Supervisors v. Otis et al. 62 N. Y. 88.

If notice to the city would not have avoided the bond, there was no question of fact for the jury, and the court should have directed a verdict for the plaintiff: Gettins v. Scudder, 71 Ill. 86.

MURPHY, P. J.   It appears that on the 7th day of November, 1869, David A. Gage was duly elected treasurer ot the city of Chicago; that he duly qualified, gave the bond required by law, and entered upon and discharged the duties of such office for the period of two years; that on the 7th day of November, 1871, he was duly elected his own successor in said office; that the defendant, David A. Gage, made his official report to the comptroller; that on the 9th day of October, 1871, there was in his hands as treasurer, the sum of $645,749.48 cash.   This sum being adopted as the basis of his future monthly reports required of him by law, adding to said sum his receipts of revenue thereafter from all sources, and deducting all disbursements made by him on account of the city.

From these reports made monthly, under oath, by the acting treasurer, it appears that on the 16th day of December, 1873, the date of the expiration of his second term of office, there was in his hands, as treasurer of said city, the sum of $965,780.81. Of this sum Mr. Gage paid over to his successor in office, the late Daniel O'Hara, the sum of $458,077.23, leaving a deficit in his hands, unaccounted for, of $507,703.58.   To recover this balance so found to be due from the treasurer, this suit was instituted in the Circuit Court of Cook County against said Gage and his sureties, on his official bond for the second term of his said office, which, upon a trial in the court below, resulted in a verdict and judgment against the plaintiffs in error, in favor of the city for the sum of $507,703.58, and costs.   The record is brought to this court by writ of error, and a reversal of the judgment of the court below is urged upon several grounds, a part of which only it will be necessary for us to consider, namely:

1st. That the court erred in not permitting the plaintiffs in error to introduce proof to the jury tending to show that the deficit above mentioned accrued and took place during the first term of office of said David A. Gage, and that the defalcation complained of was an accomplished fact before the bond sued on in this case was executed, and that therefore the sureties on the bond are not liable therefor.

2d.  That the bond sued on is not the bond of the defendant's sureties, for the reason that when they affixed their signatures thereto, it was a mere printed blank without legal form or obligation, and that since that time it has been filled up in the form of a valid bond without their consent or approval, and with the knowledge of the city, and that therefore, the same is void, and that upon the issue formed upon the plea of " *non est factum*" by them pleaded, they were legally entitled to a verdict and judgment; and 3d. That by the failure of said Gage to file his official bond within fifteen days after the canvass of the vote cast at the election, as required by law, the office of treasurer became vacant, and that his further service as such was by sufferance and without legal authority, and by the recitals in the bond the undertaking in terms is to be liable only for the time Mr. Gage, the principal obligor, should hold said office in virtue of the said election, and that therefore, all liability under the bond terminated.   As to the first point raised, it is to be observed that, by the terms of the city charter in force at the time of service of Mr. Gage, as treasurer, he was required, at the end of every month, and oftener if required,to " render an account under oath showing the state of the treasury at the date of such account, and the balance of money in the treasury, and to accompany such account with a statement of all moneys received into the treasury, and on what account, together with all warrants received, and paid by him—which said warrants, with any and all other vouchers held by him, to be delivered over to the comptroller and filed with his said account in the comptroller's office, upon every day of such settlement  *   *   *   *   * *   *   *   And annually in the month of April, before the election, and oftener if required; to report to the common council a full and detailed account of all receipts and expenditures

during the preceding fiscal year, and the state of the treasury."
* . * * * * The charter required the treasurer to
verify both his monthly and annual reports by his oath in
writing, declaring that such statement, so far as he knows or has
reason to believe, is a fair, accurate and full statement of the
matters to which it relates, and of all moneys in his hands or
which he or any one for him has received since his last official
account was rendered, and that he has not directly or indirectly
used, loaned, or invested, or converted to his own use, or suf-
fered any one to unlawfully use, loan, or convert to their own
use, any of the public moneys receivable or received by him,
or subject to his warrant or control, but that he has acted dili-
gently and without any collusion or fraud in the disbursement
of the public money of said city, and that he has rendered a
true and full account thereof in said statement."

The charter also provided that, in case said statements or any
of them shall be false, the person so making them shall be
guilty of willful and corrupt perjury, and shall be punished
accordingly.

Under the foregoing provision of the city charter, Mr. Gage,
acting as treasurer, made his monthly statements from month
to month, by which the balance above stated is clearly shown
to be due to the city. And the question we have to decide is,
whether, under the law, the defendant's sureties in the court
below had the right to impeach the reports so made by the
defendant Gage, and show that they were not true, but that the
money was not there in fact, but had been used and converted
by Gage to his own use, during the first term of his office.
The only witness offered for that purpose by the defendants in
the court below, was the defendant Gage himself. Grave objec-
tions to the competency of his testimony exist, which might
not be to the testimony of other witnesses. We think it will
be admitted that a man capable of committing the crime of
" willful and corrupt perjury," once a month for twenty-four
months, with painful regularity, must be possessed of unbounded
assurance, as well as of a case scarcely less than desperate, to
appear in open court and go upon the witness-stand, and offer
himself as a witness, to thus establish the fact of his own

felony.   We think that on the plainest principle of public policy he should not be heard to discredit statements made by him under the solemnity of his official oath, and upon which the public at that time acted and relied so implicitly, as in this case it appears it did.   But we choose to place our decision upon *broader* grounds than the mere incompetency of the witness offered, and place it upon principles of public policy, which require that not only the defendant Gage should be estopped by his reports of the amounts in his hands as treasurer at the commencement of his second term, but the sureties as well.

In the State v. Graunmer, 29 Indiana, 531, the court says: "The act of February 18, 1859, relating to township business, provides that the township trustee shall annually, on the last Saturday in February, settle with and audit the accounts of supervisors of roads in his township, and shall, within five days thereafter, make to the board of county commissioners a complete report of the receipts and expenditures of his township during the preceding year, which report shall clearly exhibit the amount received and expended on account of township, road, school and other purposes, as well as the proper balances remaining on hand, and he shall, within ten days thereafter, record at length a copy of such report in the township record, and publish the same by posting up a certified copy thereof at the place or places of holding elections."

The bond in suit was executed with reference to the matters set forth in this report.

"The sureties had the means of knowing the state of the account thus made a matter of record.   They assumed their liability in view of it.   The question now is—Ought these sureties to be allowed to prove that these reports are false?   The only knowledge the public could have as to the balance remaining on hand, was derived from this source.   The fact that the money was on hand at the time, and not wrongfully converted, as against Graunmer and his sureties, ought to be conclusively settled by this report; any other ruling would open the door to great frauds on the public.   In this case Graumer was first elected in April, 1863, and continued in office until after the April election, 1867, a period of four years.   By placing the

defalcation in the first year his sureties for 1866 would be pro-tected, and the Statute of Limitations would shield the sureties on the first bond. It is true that the sureties of a public offi-cer in the absence of special agreement, are only liable for a defalcation of their principal during the term of office covered by the bond, but what shall be received as proof of such defal-cation is quite another question."

The court in the same case refers approvingly to the case of Baker, Treasurer, etc. v. Preston, Gilm. (Va.) 235. There are numerous adjudged cases to the same effect, both in England and the other States of this country. But we think that our own Supreme Court, in the cases of Pinkstaff et al. v. The People, 59 Ill. 148, and Morley v. Metamora, 78 Ill. 394, has clearly settled the law the same way in this State. In the light of these authorities, we think there was no error in excluding all testimony tending to impeach the truthfulness of the reports of the defendant Gage, by which the amount claimed by the city is shown to have been in his hands at the time of the expiration of his term of office.

As to the second point, it is urged by counsel for the plain-tiffs in error that the verdict and judgment in the court below should have been in their favor, on the issue formed on the plea of "*non est factum*," pleaded by the sureties. This plea directly raises the question of the execution of the bond sued on. The bond being signed by the sureties in blank, and subsequently filled up by the officers of the city, without their knowledge or consent, it is insisted that as to them it is void in law, and not their bond; it having been altered or changed in a material respect after such signing, it ceased to be the bond signed by them. The following is a copy of the bond as it now appears, the printed words of the same as it was when signed being in Roman, and the words inserted thereafter to fill up the blanks being in italics:

"Official Bond.

Know all men by these presents, that we, *David A. Gage, William F. Tucker, Albert Crosby, John B. Sherman, James H. McVicker, John A. Rice, Nathaniel P. Wilder and George*

Gage et al. v. City of Chicago.

*W. Gage*, of the county of Cook and State of Illinois, and held and firmly bound unto the city of Chicago, in the penal sum of *one million* dollars, lawful money of the United States, for the payment of which sum of money, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents.

Sealed with our seals, and dated this *eleventh* day of *December*, A. D. 187*1*.

The condition of the above obligation is such, that whereas the above bounden *David A. Gage* was on the *seventh* day of *November*, 187*1*, *elected* to the office of *treasurer* in and for the city of Chicago, to hold said office for the period of *two* years, and until his successor shall be duly elected and qualified, or until said office shall be otherwise legally vacated.

Now, therefore, If the said *David A. Gage* shall well and faithfully perform and discharge the duties of said office as prescribed and required by law, and the orders and ordinances of said city of *Chicago*, and shall account for and pay over all moneys received by him as such *treasurer*, in accordance with law, and in accordance with orders or ordinances heretofore passed or hereafter to be passed by the common council of said city, in conformity with law, and deliver all books, papers, and all other property belonging to said city, to his successor in office, then this obligation to be void, otherwise to be and remain in full force and effect.

|  |  |
|---|---|
|  | David A. Gage.  [seal.] |
| { One Dollar Rev. Stamp. | Wm. F. Tucker.  [seal.] |
| Dec. *11, 1871.* | Albert Crosby.  [seal.] |
| D. A. Gage. } | John B. Sherman.  [seal.] |
|  | J. H. McVicker.  [seal.] |
|  | John A. Rice.  [seal.] |
|  | N. P. Wilder.  [seal.] |
|  | Geo. W. Gage.  [seal.] " |

"Signed, sealed and delivered in presence of

City Clerk."

"Approved,           187
    O. K.       M. F. T."

Endorsement: "Document No. 102.   Official bond of *David*

*A. Gage, City Treasurer.* Approved by the common council, *January* 8, 1872, *C. T. Hotchkiss*, Clerk. Presented to the Mayor for his approval, *Jan'y* 10, 1871; *C. T. Hotchkiss*, Clerk. Approved *Jan'y* 10, 1871; *Joseph Medill*, Mayor. *Recorded, Book* 2, *page* 31, *Official Bonds.*"

It will thus be seen, that after the bond was signed by the sureties, not only was the names of the sureties inserted in the penal part of the bond, but the penalty itself of "one million dollars," was inserted, and also the date and the office to which the principal obligor had been elected, and the time he was to serve. It is insisted by the defendants in error that the sureties, by signing this bond in blank, and placing it in the hands of Mr. Gage to be by him used as an official bond, thereby constituted him their agent for the purpose of filling up these material parts of the same, and that upon the doctrine of agency he had the legal right to fill, or cause to be filled, the blank necessary to make the bond a legal binding obligation against the defendant's sureties. This position we think is not sustained by the authorities, and that the law is clearly settled in this State the other way, and that as to all parties who had notice of such signing, or were in possession of such facts and circumstances as would put a reasonable and prudent person on inquiry, the bond is void absolutely as to the sureties. Without going further than our own Supreme Court, we think we shall find the doctrine of this State fully declared in the case of the People v. Organ et al. 27 Ill. 29.

That was a case where the principal obligor presented a bond to the authorities for approval, signed in blank, the penalty only being blank, but which was then and there inserted by the principal obligor, as in this case, and the court held that as to him it was binding. That he being present and consenting, it amounted to a re-delivery by him, but not as to the sureties. The court says: "But the question is still presented, whether the filling the blank with the amount of the penalty after the sureties had executed it, without their knowledge or consent, rendered it void as to them. Cases may no doubt be found which hold that filling a blank promissory note under seal with the amount agreed upon does not release the indorser; and that such is the case with

commercial paper generally is certainly the rule. After a deed has been executed it may be avoided by erasure, interlineation, or other alteration in a material part, or by an intentional breaking or defacing of the seal by the obligee. A deed, to be binding, must be in writing, signed, sealed and delivered by the parties. It has been held that a paper signed and sealed in blank, with verbal authority to fill the blank, which is afterwards done, is void as to the parties so signing and sealing, unless they afterwards deliver, or acknowledge, or adopt it. Gilbert v. Anthony, 1 Yerg. 69; Wayne v. Govener, 16, 149; Myers v. McCanahan, 6 Gill. & John. 250; Parmenter v. McDaniel, 1 Hill, 267; Boyde v. Boyde, 2 N. & M. 125; United States v. Nelson, 2 Brock. 64; Ayers v. Harness, 1 Harr. 368; McKee v. Hicks, 2 Dev. 379. It is believed these decisions fully accord with the rule announced by the British courts. And it is for the plain reason, that after the blank has been filled up the deed ceases to be that which the parties executed. It is then of a different tenor, and is another instrument as much as if it was executed in a penalty for one sum and was changed to a different and larger sum; and without consent, re-delivery, or subsequent ratification, no one would suppose that such an alteration could be made without releasing the sureties."

In Bartlett et al. v. Board of Education, 59 Ill. 364, the same court says that " It has been generally held that where a party signs a bond in blank, and the obligee fills it, or knows that it had been filled without the assent of the obligor, the instrument is void and cannot be enforced, and such is the doctrine of this court."

In that case, holding the bond to be valid on the grounds of estoppel, the obligor having received it in good faith, and without notice that any of the blanks had been filled after the sureties signed it.

In Smith v. The Board of Supervisors, at 412 of the same volume, the court held the same doctrine.

Whilst it is true that the decisions of the courts of the different States of this country are in conflict on this question, and that there are to be found numerous decisions to the contrary by courts of the highest respectability, they have but the force

of precedents; whilst the determination of the question by our own Supreme Court has the force of authority with this court, and we think that whatever may be the view of the courts of other States, the law in this State is clearly settled. Ingraham et al. v. Edwards, 64 Ill. 526, and authorities there cited; Chase v. Palmer, 29 Ill. 306; Sans v. The People, 3 Gilm. 326. It is disclosed by this record that some time in November, 1871, about the 15th, Mr. Robert Clark, Mr. Gage's son-in-law, at the instance of said Gage, took this bond, then blank and without any writing upon it except the signature of Mr. Gage, and went to the Union Stock Yards to secure the names of Mr. Tucker and Mr. Sherman as sureties. That upon meeting Mr. Tucker, he made known to him his business, and requested him to sign the bond, and procure Mr. Sherman to do so. Mr. Tucker inquired of him (Clark) "what was to be the amount of that bond, and who was going to sign it?" That Clark replied that the amount had not been fixed, but that he, Tucker, could find out the amount which was yet to be fixed, and also the names there should be on it when he qualified. "That he would have to go down and qualify to the bond." Mr. Tucker signed it under these circumstances, and proceeded to procure Mr. Sherman to do so. Upon presenting it to Mr. Sherman, he, Sherman, inquired what was to be the penalty of the bond. When Mr. Tucker informed him of the representations made by Clark, Mr. Sherman said he would not sign it at all if the penalty was to be over $250,000, and not then unless the co-securities were satisfactory to him. But whether he would stand on the bond as security or not, he would reserve until he "went down to acknowledge the bond," as above stated. Under these circumstances he signed the blank bond. He and Tucker both testify that they were never called upon to, and never did acknowledge the bond, or see it again until on the trial of the cause in the court below, and never authorized any one to fill up the bond, and that they had never ratified or approved of the bond since it was so filled up. These facts are undisputed in the case.

By an application of the principles of the law, as held by our own Supreme Court to these facts, it is manifest that the bond is void absolutely as to the defendant's sureties.

But it is insisted by counsel for defendants in error, that the sureties on this bond must be held liable upon the grounds of estoppel.  Upon the principle that when one of two innocent parties must suffer in consequence of the fraudulent act of a third, that one of the former must bear the loss, who by his negligent act has enabled the third party to commit the fraud, and that the sureties by signing the blank as they did, and permitting said Gage to have possession of it with their signatures upon it, enabled him to fill up the blanks and present it in complete form to the city, and thus practice a fraud upon it by reason of their negligent act in thus signing the bond in blank, and insist that Gage made such use of the bond, and that the city, without any notice of these antecedent infirmities in its execution, accepted the same, and that therefore the sureties are now estopped to set up this defense.  This raises the important question of whether the city did have notice at or before the time of accepting the bond of the facts in respect to the execution thereof.

By Section 25, Chap. 2, of the city charter, in force at the time this bond was delivered, it was provided that:  " All city officers who are required by the provisions of this act, or by any legal ordinance passed by the common council, to give bonds for the faithful performance of their official duty, shall file their bonds with the city clerk within fifteen days after their election or appointment, and he shall record them when approved, in a book kept for that purpose."  When bonds are not filed with the city clerk within fifteen days after the votes shall have been officially canvassed, or after the appointment shall have been made, the person so in default shall be deemed to have refused said office, and the same shall be filled by appointment as in other cases."

" If in any case any official bond so filed shall not be approved, the officer filing the same shall file a new and satisfactory bond within fifteen days after such disapproval, and in case of a failure so to do he shall be deemed to have refused said office, and the same shall be filled as above provided."

By this section it will be seen that the city clerk is made the receiving officer or agent of the city, to receive and hold all

official bonds of city officers, and the General Assembly, by providing this particular mode of receiving a delivery of official bonds, excludes all others.

It follows, then, that the only way a valid delivery of such bond could be made under the law, was to deliver it to the city clerk, which is for all legal purposes a delivery to the city.

It will be admitted that the delivery is as necessary to its binding obligation as the signing of the bond itself. If, then, the city clerk is the sole and only agent competent in law to receive a delivery of this bond, made so by the city charter as above quoted, it is not perceived on what legal principle it can be said he is not an agent of the city to receive notice of any fact affecting the bond, which, as we have seen, must of legal necessity be delivered to him in order to give it validity as a legal obligation.

We think it a well-established rule of law, that notice to an agent in the transaction for which he is employed, is notice to the principal, and that the rule applies with equal force to a corporation as to a natural person.

It is disclosed by this record that the canvass of the votes took place on the 20th day of November, 1871; that on the 27th day of the same month Mr. Gage deposited this bond in blank with General Hotchkiss, the city clerk; that it remained with him in that condition until the 11th day of December, five days after the expiration of the time when he had a right to give bond and take said office.

Of course the clerk was thus in possession of full notice of the fact that the bond, when delivered to him for and on behalf of the city, was in law void and of no valid effect, by reason of being a mere blank, with scarcely the semblance of a legal obligation.

That during that time Mr. Holden, presiding officer of the common council of the city, had his attention called to this bond. When on the 11th day of December the city clerk, accompanied by Mr. Gage, went with the blank to the office of the corporation counsel to have the same filled up, finding Mr. Tuley, the corporation counsel, temporarily out of his office, Mr. Clyde, his (then) assistant, and in the employ of the

Gage et al. v. City of Chicago.

city in the legal department thereof, to assist the corporation counsel in the discharge of his duties, filled up the bond in its present form, and subsequently it was returned to the city clerk, and on the 8th day of January, 1872, approved by the common council.

We can not concur with the view taken on the trial below, that in order to affect the city with notice, it must be brought home to the knowledge of the corporation counsel; but are of the opinion that notice to the city clerk was good and valid notice to the city.    But if it were necessary to show notice home, even to the common council, we think enough appeared on the face of the bond to have put it on inquiry. The common council knew the law; and that after the 6th day of December said Gage was held to have refused the office, and that after that time he had no legal right to give a bond and take the office.    This bond bearing date as it did, on the 11th day of December, was a fact it had no right to close its eyes to; but was a fact quite sufficient to put it on inquiry, and it clearly was its duty to have instituted an inquiry as to how this state of things had occurred.    If it had done so it would have found out the terms on which Tucker and Sherman had signed this bond, and that it had been left in the hands of the clerk on the 27th day of November, in blank, and was not in law binding on the sureties.    Under all these circumstances, we think it cannot be said that the city accepted this bond without notice.    What it might have learned by reasonable inquiry it must be held as knowing.    The simple date of the bond under the law was enough to have caused a reasonable and prudent party to have made the inquiry, and if the common council had performed its obvious duty in that regard, these sureties would have been called in, and either have ratified the bond or refused to do so.    So that in any event the misfortunes of the city in this regard would have been avoided.

But upon the theory that notice to affect the city must be given to the corporation counsel, we suppose it will not be disputed that if given to the assistant corporation counsel it would be quite as effective as if given to the corporation counsel

himself. Assuming that to be so, we are unable to see any valid objection to instructions Nos. 12 and 14, which are as follows:

12. " If the jury believe, from the evidence, that Mr. Clyde, at the time of the preparation of the instrument in suit, was an attorney employed by the city of Chicago as an assistant to the corporation counsel in the law department of said city, and having his office with the said corporation counsel, and in that capacity was by said city and said corporation counsel entrusted with the preparation of official bonds, and that he, as such assistant, was called upon in said office to, and actually did, fill up blanks in said instrument, existing in the same at the time the same was signed by the parties now claimed to be sureties, and that one of said blanks so filled was for the amount of the penalty of said instrument, which had not been fixed at the time the same was signed, then the fact that said instrument was signed so in blank was necessarily known to said Clyde, and the knowledge of said Clyde, thus obtained by him was in law the knowledge of said corporation counsel, and of the city of Chicago."

13. "And if the jury further believe, from the evidence, that the said instrument now sued on was signed by the said sureties in blank, as aforesaid, with the knowledge thereof, communicated to the city of Chicago, as aforesaid, through the assistant counsel of said city aforesaid, and in the manner aforesaid, with the understanding on the part of the defendants, Tucker and Sherman, at the time they signed the same, that it would not be valid or binding upon them unless acknowledged by them after it was filled up; and that they were not present at the time said instrument was so filled up by said Clyde, and never afterwards saw, acknowledged, ratified, or in any manner approved of said instrument, then, as to said Tucker and Sherman, the said instrument is absolutely void, and the verdict of the jury must be for the defendants."

14. " The law makes it competent for the parties defendant to show by proper evidence the exact circumstances existing at the time they signed the instrument sued on, and its condition at that time; and if the jury believe, from the evidence,

Gage et al. v. City of Chicago.

that said instrument was signed by the defendants, Tucker and Sherman, whilst the same was in blank as to dates, amount of penalty, and names of obligors, with the understanding that the same would not be used or become binding upon them, or either of them, until and unless acknowledged and ratified by them after the same was filled up, and that, at that time, and in that connection, their attention was called to the blank form of acknowledgment at the bottom of said instrument; and if they further believe, from the evidence, that in that condition said instrument came into the possession of the assistant corporation counsel of said city, in the discharge of his official duties, and who, as such, was intrusted with the preparation of official bonds and other papers, in which said city was interested, and that said assistant counsel filled up said instrument in the office of said corporation counsel, in the absence of said Tucker and Sherman, without their knowledge or consent; then the knowledge of said assistant counsel of the fact, that said instrument was so signed in blank, was constructive notice to him of all the facts and circumstances attending the signing of the same, or such of them as would have been discovered upon due inquiry, and such knowledge of, and notice to the said assistant counsel of the city, was equivalent in law to the knowledge of, and notice to the corporation counsel of said city, and therefore was the knowledge of, and notice to, the city of Chicago," asked by the plaintiffs in error.

They submitted the question of fact to be found by the jury, whether at the time Clyde filled out the bond he was assistant corporation counsel; and if so, then notice to him was notice to the city. We think they should have been given, and that upon the theory the case was tried, it was error to refuse to do so.

We are therefore of the opinion that the judgment should have been for the plaintiffs in error on the issue formed on the plea of "*non est factum*," and that it was error to give judgment for the defendant in error.

Thirdly, it is claimed by the plaintiffs in error, that the failure of defendant Gage to file his official bond within fifteen days after the canvass of the votes, vacated the office; and that the bond being signed by defendant's sureties during the fifteen

days, but not filled up or dated until twenty-one days after the canvass of the votes, the office of city treasurer became vacant, and that their liability ceased.

It is urged by the defendants in error that the statute requiring the bond to be filed within fifteen days is directory, and that a failure to file in that time does not vacate such office, and that having filed a bond which was accepted by the common council, it is a waiver on the part of the city of its rights to appoint a treasurer, and that the holding of said office was in conformity to the law providing for the election of such officer, and the recitals to that effect in the bond.

It becomes important to know whether the holding of the office by Gage was a *de jure* or *de facto* holding, for if the latter, the bond by the terms of its covenants forbid the idea of the liability of the sureties. The recital of the bond under discussion is as follows: " The condition of the above obligation is such, that whereas, the above bounden David A. Gage was on the 7th day of November, 1871, elected to the office of city treasurer in and for the city of Chicago, to hold said office for the period of two years, and until his successor shall be duly elected and qualified, or until said office shall *be otherwise legally vacated.*" From the very terms of the undertaking, as it will be seen, if the office became vacant the liability of the sureties ceased, and to hold otherwise we think would be to enlarge the liability of the sureties beyond the plain terms of their covenant, which one of the well established maxims of the law says can not be done. By the section of the city charter above quoted, it is clear that the charter requires the oath of office to be taken, and the bond required by law to be filed within fifteen days after the canvass of the votes—which, in this instance, took place on the 20th day of November, 1871. And it is disclosed by the record that the defendant Gage took the oath of office on the 27th day of the same month, but failed to file his bond until the 11th day of December, 1871, being six days outside of the time limited by law for him to do so.

We are of the opinion that the filing of the bond within fifteen days from the canvass of the votes was a condition precedent to his obtaining the office, and that therefore the

public had such rights in the performance of that condition as to make the language of the statute mandatory, and not simply directory, as contended for by the defendants in error.

We understand the case of Kane v. Footh, 70 Ill. 590, to be an authority in support of such rule. The language of the charter is the language of command, and would indicate that to be the Legislature's intent. "The person so in default shall be deemed to have refused said office, and the same shall be filled by appointment." We think the public have the right to have the bond given within the time fixed by law, and if not so done, the right to have some one appointed who would give to the public the contemplated security. For the purpose of this view it is not material that the city did not assert the right of appointment in this case, but the fact that it had the right on behalf· of the public to appoint, goes to show that it was a requirement of law in which the public was interested, as tending to show to which class of legislation the provision belonged, directory or mandatory. We think the act belongs to the latter class, and that his failure to comply with it in time worked a vacation of the office.

Under the terms of the bond this released the sureties from further liability, even though the bond was in other respects perfect, and for these reasons we think it was error to overrule the motion for new trial, and render judgment on the verdict.

For these errors the judgment of the court below is reversed.

Judgment reversed.