### William H. Coons *et al.*

*v.*

### The People of the State of Illinois.

1. Collector's bond—*additional bond may be required.* Where, after the filing of a county collector's bond for the collection of the ordinary revenue, such officer was required to collect an additional tax, the board of supervisors may lawfully require the giving of an additional bond in a penalty double the tax to be collected by him.

2. Same—*estoppel.* Where an officer gives a bond, under which he is allowed to receive moneys, make sale of land for taxes, and receive commissions, he and his securities will be estopped from denying the validity of such bond when sued for a breach of its condition. It will be obligatory as a common law undertaking, unless prohibited by statute or opposed to public policy.

3. Same—*misdescription of the tax in respect to the year.* Where a special bond given by a collector in respect to a special bounty tax required the collector to perform the duty of collector of such tax for the

year 1864, when, in truth, there was no such tax levied for that year, but for the year 1865, and for that year only: *Held,* that the year 1864 might be properly rejected as surplusage, as such tax was levied for one year only.

4. Describing the collector as "collector of the bounty tax" in a special bond given to secure the performance of his duty in respect to such tax, will not vitiate the bond, as the law makes him the collector of all the taxes.

5. SAME—*whether necessary to prove the levy of the tax.* In a suit upon a collector's special bond given to secure the collection, etc., of a bounty tax, there was no proof of any order levying such tax, but the bond admitted that there was such a tax to be collected, and during the trial no question was made that there was such a levy, but it was conceded by the line of defense: *Held,* that the order levying such tax under such circumstances was not necessary to a recovery, upon the bond, of the taxes shown to have been collected by him.

6. SAME—*proof of conversion of moneys not necessary.* Where an officer who has collected revenue, refuses to pay over the same on a proper demand, or neglects to make settlement with the county board when required by law, he must, when sued for the same, show what he has done with it, and in such a case no other proof of a conversion is necessary to authorize a recovery upon his bond.

7. SAME—*whether liable on first or second bond in case of re-election.* Where taxes were collected by a collector, and orders taken up during his first term of office, and he failed to make a report of his acts and to make settlement with the board of supervisors when required by law before the expiration of his term, and he was re-elected, and in a suit upon his bond given during the first term, it was contended that the sureties on the last bond given by him were liable, as it would be presumed he paid over the funds to himself as his own successor: *Held,* that the sureties in the first bond were liable, for the reason that the collector failed to make a report and surrender up the orders taken by him, and to settle with the county board when required by law.

APPEAL from the Circuit Court of Clark county; the Hon. O. L. DAVIS, Judge, presiding.

This was an action of debt, by the People of the State of Illinois, for the use of the board of supervisors of Clark county, against William H. Coons, and others, the sureties of said Coons, upon his bond as collector. The material facts of the case are stated in the opinion of the court.

Messrs. DULANEY & GOLDEN, and Messrs. WILKIN & FICK-LIN, for the appellants.

Mr. S. S. WHITEHEAD, for the People.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears that appellant Coons. on the 10th day of April, 1865, entered into bond, with the other appellants, as collector of a bounty tax levied in Clark county.   The bond, as executed, has this condition:

"The condition of the foregoing bond is such, that if the above bound William H. Coons shall perform all the duties required to be performed by him as collector of the bounty taxes for the year 1864, in the time and manner prescribed by law; and when he shall be succeeded in office, shall surrender and deliver over to his successor in office all books, papers and moneys belonging to said county, or to the State, and appertaining to his said office, then the foregoing bond to be void; otherwise to remain in full force."

The declaration contained various breaches, and issues to the country were joined on several which averred that he had in his hands a large sum of money collected as a bounty tax, also a large number of bounty orders issued by the county, and a large sum of poll tax, all of which he had failed to turn over or account for to the board of supervisors or to his successor in office, and had converted them to his own use. There were pleas filed, among which was a plea of performance and a plea of want of consideration.

A trial was had on the issues, by the court, by consent, without a jury.   The court, after hearing the evidence, found the issues for the plaintiff, and rendered judgment for $6737.71, from which defendants prosecute this appeal and assign various errors.

The first question urged in argument by appellants is the want of consideration to support the bond; that the law did

25—76TH ILL.

not require a bond. The whole proceeding was conducted under a special act adopted at the session of 1865, 1 Vol. Priv. Laws, p. 110, sec. 5. It provides, "All taxes which may be levied in pursuance of the provisions of this act, shall be collected by the same officers and in the same manner as other county taxes, but the commission for collecting the same shall be only one-half now allowed by law for collecting county taxes."

Does this provision require the collector to give a bond for the faithful discharge of his duties in collecting and disbursing this fund?

What is the manner of collecting taxes in counties under township organization? After the assessment is made, the warrant is issued to the township collector, who makes return of the money collected and his books to the county treasurer, who receives such as may be paid, and sells real estate for taxes delinquent on lands, and thus collects all of the various taxes so far as that may be done. But the township collector is not qualified to collect until he has given a proper bond as required by the statute. The county treasurer is declared to be collector, and he is not qualified to act as collector until he has taken the oath of office and has given a further bond to the people in double the amount of the taxes to be collected for that year; and a failure to give such a bond vacates his office.

The execution of this bond is a part of the manner of collecting the taxes. Without it there would be no power to collect them legally. And the law requires that it should be in a sum double the amount of taxes to be collected. Here was a very large increase of the taxes levied after the collector's bond had been executed. Suppose, from inadvertence or otherwise, the collector's bond had been greatly too small when approved, does any one doubt that the board of supervisors would have had complete power to require a new or an additional bond? To hold it could not be done, would be to hamper that body in requiring the officers having charge of

the collection of taxes to render the public secure in their revenues, and might lead to disastrous results in numerous instances. The law has required the bond to be executed in a particular manner, and imposed the duty on the board of supervisors to require a compliance with its terms, and they must be held to be invested with ample power to enforce a compliance with the law in this particular.

If such a requirement may be made in the case supposed, why may not the same be made and enforced where the law has authorized the levy of a tax after the collector has given his bond, whereby it may be the bond may lack many thousand dollars of being double the amount of all taxes to be collected? The reason is as cogent in the latter as in the former of these cases. And we are of the opinion that the board of supervisors were authorized to require it, and hence there was a valid and legal consideration for its execution. We do not regard it as a mere voluntary bond, given where it was not authorized by the law.

The cases referred to in other States are not in point, and are perhaps under different statutes. The case of *People* v. *Johr*, 22 Mich. 461, holds that, where money is obtained under and by virtue of such a bond, the parties are estopped from denying its validity. It was held that, where the county treasurer was allowed to receive money and to make tax sales, the obligors could not be allowed to avail of the advantages derived from an attempt to perfect a statutory bond, and then to urge that such defective bond was not obligatory. And in the case of *Prichett* v. *The People*, 1 Gilm. 525, this court, in the case of an administrator's bond, announced the same doctrine. It was held that, by the execution of the bond, the principal, under color of legal authority, obtained the control of the personal estate of deceased, and disposed of it as the law authorized. They thus became entitled to commissions for their services; that the right to receive compensation in the shape of commissions was a valuable consideration for the promise of the principal and to sustain that of the sureties;

·that such a bond was good at the common law, unless prohibited by statute or is opposed to public policy. So, in this case, the collector obtained control of this tax fund, received commissions under this bond, and, inasmuch as it is not prohibited by statute, nor is it opposed to sound public policy, it must be held obligatory.

It is urged that the bond is void, because it requires Coons to collect and to account for the bounty tax for the year 1864, when there was levied no such tax for that year, but it was levied in March, 1865. Also that there is no such office as collector of bounty taxes, and the bond imposes upon him all the duties required of him as collector of the bounty tax.

We perceive no force in the latter of these two objections. He was, in effect and for all practical purposes, the collector of that tax. He was the collector of the State, the county, school and other taxes, and we fail to see that it was of any material consequence whether he was described as county collector or as collector of the bounty tax, as his duties under the law were the same in either case. When he discharged the duty imposed by this special law, he and his sureties were fully discharged to that extent. Whether he regarded himself as county collector or collector of the bounty tax, when he was receiving and paying out this tax, could not matter, as all such acts would be referred to this bond.

The question of whether he and his sureties can be held liable under this bond for bounty taxes levied in 1865, is not free from difficulty. It seems to be conceded that there was but one bounty tax ever levied in that county, and that was in March, 1865, and it may be inferred that it was to secure the faithful performance of Coons' duty in collecting and disbursing this tax that induced the county authorities to require him to execute this bond; and it is apparent that if the wrong date was written by mistake, a court of equity would reform and correct the instrument. If, however, we may, in the light of all the surrounding circumstances, strike out the

figures "1864" as surplusage, the condition of the bond would be free from all doubt and uncertainty.

When it is seen that there was but one such tax levied, and it was ready to be collected, and this bond was manifestly entered into to enable Coons to collect that tax, we do not perceive that we should do any violence to the rules of interpretation by rejecting the figures as surplusage. By doing so we feel well assured that we are but carrying into effect the clear intention of the parties. The obligors manifestly intended to bind themselves for the faithful discharge of all the duties of Coons in reference to the collection of this tax, and they delivered it, and the county authorities received it as a valid and effectual instrument. The makers, we may well suppose, intended to deliver a valid instrument. Nor did the county authorities intend to receive an invalid bond. Had there been a tax levied for 1864, then the bond would only apply to that tax. But there being none for that year, the recital is untrue, as there was nothing that language could embrace. But when stricken out, the bond then embraces what was intended by all parties, and carries out their purposes when the instrument was executed. We feel ourselves fully warranted in rejecting the repugnancy and holding that the bond applies to and embraces the bounty tax thus collected, and that there is no necessity to turn the parties over to a court of equity.

It is insisted that appellees failed to make a case against appellants; that the order levying the tax should have been read in evidence.

The evidence shows there was a bounty tax levied, and that Coons collected a large portion of it. They, in their bond, admit there was a bounty tax to be collected, and it does not seem, during the whole trial, to have been questioned, but to have been conceded. The town collector's books show it, Coons' receipts show it, and the whole line of defense concedes it. Under these facts, we think the court had ample

evidence that the tax was levied, and, moreover, several of the pleas admit the tax was levied.

Where an officer collects money under an execution, he would not be heard to say that there was no judgment on which it could issue, and he would therefore appropriate the money to his own use. Having acted under it, he admits and is bound by it as being a valid process. So in this instance, Coons received the warrants from the various town collectors without question, and proceeded to collect and did collect large sums of money under these warrants, and why should the order levying the tax be produced? We are satisfied that the evidence was sufficient to show the tax was levied, and that is all the rules of practice require.

It is urged that appellees failed to prove a conversion of this fund; that the mere proof that Coons had received the money was not enough to require him to show what he did with it.

We entertain no doubt that, where an officer has received money and refuses to pay on a proper demand, he must then show what he has done with it, or be liable for it. Or where he is required to dispose of it in a specified mode, by a particular time, and he fails to do so, he is then, to avoid liability, required to account for its proper and legal disposition.

The 13th section of chapter 28, R. S. 1845, requires the county commissioners, at the June and December terms of each year, to settle with their county treasurer and count the funds in the treasury, and the clerk to enter of record the amount and kind of funds in the treasury. Although this, in terms, applies to county commissioners, as has been repeatedly held, it embraces boards of supervisors, as the law applicable to the first is declared to embrace the latter. The settlement being required, it is the duty of the treasurer, who is *ex officio* collector, to become an actor in such settlement. He necessarily should present a full and detailed statement of the moneys received from all sources and the moneys paid out, with dates, etc., as the basis of a settlement. He has the

books and the treasurer's and collector's accounts, and he should furnish the information to the board, and then it is their duty to examine it, by committee or otherwise, and see that it is correct; and a treasurer failing to do so when acting as collector, is in default of duty to the same extent that he is when acting as treasurer, and when he fails or refuses to report at the regular session of the board of supervisors, he has omitted a duty imposed by law that places him in a position that he must, when thereafter legally required, show what disposition he has made of public funds that have come to his hands. Thenceforward the burthen of proof is upon him to discharge himself from the liability to account for and 'pay over funds shown to have come into his hands.

In this case it appears that Coons did not offer to report until in 1868, and, from some unknown cause, and strange as it may seem, the board of supervisors would not receive it or permit it to be read. Why they should refuse to receive the report and settle with the collector, in violation of a requirement of the statute, is incomprehensible to us. We can imagine no well founded reason for such action, when we see it accompanied with positive refusals of the board to settle with Coons. It has much the appearance of an effort to permit Coons to use and appropriate this fund to his own use, or to shield him in defaults he had already committed. Nor does it imply that they were zealous in protecting the people in their pecuniary rights. But that did not release Coons from the effect of his neglect to report during the year 1865, for the tax collected before the annual session of the board of supervisors, or at the first session in 1866, for moneys thus collected and bounty orders received after the time he should have reported. But failing to report in 1865, he should have made a full report in 1866. But failing in this duty, it devolved on him to show what he had done with the money and orders which he is shown to have received. If he did his duty, he collected the taxes within the time required by law, either by voluntary payment or by sale of delinquent lands.

And inasmuch as we have no evidence of a sale having been made, we may presume collections were made during the year 1865, prior to his entering upon his second term. In this case he was shown to have received during his first term, of this tax, a sum very much larger than the judgment recovered. The receipts were in money and bounty orders uncanceled and liable to be again put into circulation. Appellants have failed to show that such orders were ever canceled, and failing to do so, the court below was fully warranted in the inference that they had been again put in circulation by Coons, and, for the same reason, that he had used the money for his own individual purposes, and the county would be thus compelled to again take up the orders, and also to levy and collect a sum of money to replace the amount thus used.

It is urged that it is not shown that Coons did not pay over the money and orders thus collected to his successor, and hence appellants are not liable; that, as he became his own successor about the first day of December, 1865, we must presume he complied with that part of the condition of his bond. This might be true if there were no other condition in the bond. But it is conditioned that he will perform all of the duties required of him as collector of the bounty tax, etc., in the time and manner prescribed by law. It was manifestly a breach of duty for him to convert the money and orders which he had collected to his own use; and in the fourth breach of the declaration it is averred that he so converted them. And as he had received a large sum more than the judgment, failed to report and to surrender up the orders at the September session of the board in 1865, and has failed to show what disposition has been made of them, the court below was warranted in finding that he had converted them to his own use; or, under other breaches, that, having converted them, he did not pay and deliver them to himself as his successor. If previously converted, he could not, in any sense, deliver them to his successor.

The entire record considered, we fail to find that there is any error for which the judgment of the court below should be reversed. In fact, the evidence would have justified a much larger judgment.

*Judgment affirmed.*

Mr, Justice Scholfield took no part in the decision of this case.