ESTATE OF RUFUS N. RAMSAY

*v.*

THE PEOPLE, for use of Southern Illinois Penitentiary.

*Opinion filed June 19, 1902.*

1. BONDS—*when proof of signatures of sureties on official bond is unnecessary.* If an official bond is acknowledged as required by section 1 of the act relating to official bonds, the acknowledgment is *prima facie* evidence of its due execution, and proof of the signatures of the sureties is unnecessary where no proof is offered to overcome the *prima facie* case made by the acknowledgment.

2. SAME—*certified copy of bond deposited with the Secretary of State is competent.* Under section 7 of the act relating to the Secretary of State, copies of all bonds legally deposited in the Secretary's office, when certified by him and authenticated by the seal of his office, are admissible in evidence the same as the originals, even though the latter are not lost.

3. SAME—*when official bond is presumed to have been delivered.* If the bond of the warden of a penitentiary is signed and acknowledged, approved by the penitentiary commissioners and forwarded to the Secretary of State during the lifetime of the sureties, the fact that the file-mark of the Secretary's office bears a date subsequent to the death of one of the sureties does not release the latter's estate.

4. SAME—*approval of official bond is for protection of the public.* A requirement that an official bond be approved by some representative of the government is for the protection of the public, and not the principal or his sureties.

5. SAME—*formal acceptance of a bond not necessary to bind sureties.* No formal acceptance of an official bond is required in order to justify a recovery upon it against the sureties, nor need there be written evidence of its acceptance and approval.

6. SAME—*duly executed official bond is binding on sureties unless disapproved.* If an official bond is executed and delivered to the proper representative of the government it becomes binding upon the parties signing it, unless disapproved by such representative; and the latter's mere non-action does not deprive the officer of power to act nor relieve the sureties.

7. SAME—*warden's bond is binding though not approved by Governor.* If the official bond of the warden of a penitentiary is executed and acknowledged, approved by the commissioners of the penitentiary and deposited with the Secretary of State, it is binding upon the parties signing it although it is not approved by the Governor.

8. SAME—*what sufficient evidence of acceptance of a bond.* The fact that a public officer acted and was recognized as such is sufficient

evidence of the acceptance of his official bond and of the liability of the sureties for the non-performance of the officer's duties.

9. SAME—*statutes form a part of official bond.* The sureties upon an official bond, conditioned for the faithful performance of his duties, are liable for all duties imposed upon him within the scope of his office, whether required by laws enacted before or after the execution of the bond; and the laws in force when the bond is executed become a part of the contract between the officer, his sureties and the public.

10. SAME—*warden of penitentiary is not a mere bailee.* By the terms of the statute the warden of a penitentiary in Illinois is custodian of all funds of the institution, and is, in effect, a debtor to the public, and his liability being absolute, neither he nor his sureties are relieved from liability for the loss of money deposited in a bank which he supposed solvent, even though the bond is conditioned only for the faithful performance of his duties as warden.

11. SAME—*public officer is insurer of public funds.* A public officer, when he executes a bond binding himself to faithfully perform the duties of his office, becomes insurer of the public funds coming into his hands, by virtue of the bond and the statutes, which are a part of the bond.

12. SAME—*when sureties are estopped to deny validity of bond.* If a public officer gives a bond, under which he is allowed to receive money, and does actually receive it by virtue of his office, he and his sureties are estopped to deny the validity of the bond when sued for breach of its conditions.

13. SAME—*effect of giving of temporary bond.* If the warden of the penitentiary gives a temporary bond during the absence of the State Treasurer, but upon the latter's return gives a new bond with the Treasurer as surety, which is approved and accepted by the commissioners, the new bond is binding upon the sureties, irrespective of what became of the temporary bond or whether or not the warden gave notice that a new bond was given.

14. SAME—*sureties cannot say that some other officer was negligent.* Sureties on an official bond of the warden of the penitentiary, when sued to recover the amount lost by the failure of the bank where the warden had deposited the money, cannot be heard to say in defense that the commissioners of the penitentiary were negligent in allowing warden to have the money in his possession.

*Estate of Ramsay* v. *People ex rel.* 97 Ill. App. 283, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Clinton county; the Hon. TRUMAN E. AMES, Judge, presiding.

This is a claim, originally filed on March 20, 1896, in the county court of Clinton county against the estate of Rufus N. Ramsay by the commissioners of the Southern Illinois Penitentiary, for $11,750.00, being an amount, claimed to be due on the official bond of James D. Baker, as warden of the Southern Illinois Penitentiary, upon which bond Rufus N. Ramsay was one of the sureties. Owing to litigation over the Ramsay estate between the bondsmen of Ramsay on his State Treasurer's bond and his local creditors, the claim so filed against his estate lay in abeyance until May, 1900. By agreement of counsel the claim was transferred from the county court to the circuit court of Clinton county at the May term thereof, 1900. After the cause had been transferred by consent to the circuit court, it was docketed as follows: "The People of the State of Illinois for the use of the Commissioners of the Southern Illinois Penitentiary *vs.* Estate of Rufus N. Ramsay." A trial was had in May, 1900, before the court without a jury, jury having been waived by agreement. The issues were found in favor of the plaintiff, and the amount due was found to be $11,-750.00. On May 29, 1900, judgment was rendered in favor of the claimants for said sum of $11,750.00, which amount was allowed as a claim of the seventh class to be paid in due course of administration.

From the judgment, so rendered by the circuit court, an appeal was taken to the Appellate Court, where the judgment was affirmed. The present appeal is prosecuted from such judgment of affirmance.

James D. Baker was appointed warden of the Southern Illinois Penitentiary on January 23, 1893, and served as such warden until November 30, 1894, when he resigned, and was succeeded in office by John J. Schneider. On January 24, 1893, Baker gave what was termed, and accepted by the penitentiary commissioners, as a temporary official bond in the sum of $50,000.00, with Thomas

E. Ford, Henry Seiter and Charles J. Reuter as sureties, and at once took charge of the penitentiary.

On February 15, 1893, Baker executed another official bond in the sum of $50,000.00, signed by himself as principal, and Henry Seiter, Rufus N. Ramsay and Charles J. Reuter as sureties. This bond was presented to the commissioners, and by them approved, and sent to the office of the Secretary of State. The condition of the bond is as follows: "The condition of the above obligation is such, that, whereas the above bounden James D. Baker has been appointed warden of the Southern Illinois Penitentiary, now, if the said James D. Baker shall faithfully perform his duties as such warden, then this obligation to be void, otherwise to be in full force and effect." The bond was acknowledged on February 15, 1893, by Rufus N. Ramsay before a notary public in Sangamon county. On February 20, 1893, it was acknowledged by Baker and Seiter and Reuter before a notary public in St. Clair county, and on the same day the oath of office was taken by Baker and subscribed by him in writing. Upon the trial of the case a certified copy of the bond was introduced in evidence, certified by the Secretary of State to be a true copy of the bond of James D. Baker, as warden of the Southern Illinois Penitentiary; and, in his certificate dated March 20, 1896, the Secretary of State uses these words: "Filed January 9, 1895, the original of which is now on file in this office." Ramsay died on November 11, 1894.

When Baker left the office as warden on November 30, 1894, he turned over to his successor, Schneider, all the moneys and effects due the penitentiary, except $11,-750.00. At that time there was charged to him $21,190.86. Of this last amount he had $9390.57 in the safe at the prison, which he turned over to Schneider. He gave him a check on the First National Bank of Chester for $50.29; his books kept by him at the penitentiary showed that he had $11,750.00 in the bank of Henry Seiter & Co.

While he was warden, Baker received a large amount of money, belonging to the State, partly from the sale of products of the penitentiary, and partly from appropriations made by the State for the support of the institution. About ten days after Baker resigned as warden, and on December 10, 1894, Seiter made an assignment for the benefit of his creditors. Baker died before the trial of this case. Baker made no effort to obtain the balance of $11,750.00 from Seiter at the time he turned over his office to Schneider on November 30, 1894. While Seiter's bank was still open for business, and before he made his assignment, Baker knew that the assignment was about to be made; and there is evidence tending to show that he knew the financial condition of Seiter some time before the assignment. He was with Seiter at Lebanon, where Seiter's bank was located, several days before the assignment was made, and informed two of the commissioners of the penitentiary the day before it was made of Seiter's intention to make it the next day.

Upon the trial of the cause four propositions were submitted to the court by plaintiff below to be held as law in the decision of the case, and they were so held, and marked "held" by the court. Six propositions, to be held as law in the decision of the case, were submitted by appellant upon the trial below, but were marked refused by the court.

JOHN G. IRWIN, and M. P. MURRAY, for appellant:

A warden's bond must be approved by the penitentiary commissioners and by the Governor, and be deposited in the office of the Secretary of State. Starr & Cur. Stat. (2d ed.) chap. 108, sec. 8, p. 2942.

The estate of Ramsay, in any event, was not liable for breaches of duty occurring before the bond was given, if it was given. Starr & Cur. Stat. (2d ed.) chap. 103, sec. 11, p. 2834.

It was not within the authority of the commissioners to release the Ford bond. *Cawley* v. *People*, 95 Ill. 248.

The only way in which sureties can obtain relief from future liability on official bonds is by giving notice requiring a new bond. They can thus obtain a new bond or have the office vacated. *Stern* v. *People*, 102 Ill. 541.

Even the filing of an official bond is only a conditional delivery of it. Until it is accepted and approved it is not complete. *Cawley* v. *People*, 95 Ill. 250.

The power to approve or reject a bond cannot be delegated. It is an official act, and can be exercised only by the organized body to whom it is granted. *Cawley* v. *People*, 95 Ill. 250.

Representations by the principal, at the time of executing a bond, as to its purpose, are not available as a defense, the terms and effects of the bond being fixed by statute. *Ladd* v. *Trustees*, 80 Ill. 233.

Delivery to and acceptance by the designated authorities are essential to validity of an official bond. 4 Am. & Eng. Ency. of Law, (2d ed.) 622.

The claim being based on an instrument in writing, it was error to allow the claim without proof of signature. Rev. Stat. chap. 3, sec. 65.

The chief duty of the warden is, under the commissioners, to operate the prison factories, superintend the prison work, market the prison product and conduct the institution as a prison. He is custodian of the prison property and money only for the attainment of these ends. He takes oath and gives bond only for the faithful performance of these duties, and is held to the same care he would be as manager of a like institution for another. His liability is no greater. He is held to exercise such care as a prudent person would in the conduct of his own affairs, and no more. Starr & Cur. chap. 108, secs. 8, 14, 19, 36; Laws of 1893, p. 41-48; *United States* v. *Thomas*, 15 Wall. 337; *Railroad Co.* v. *Bartlett*, 120 Ill. 608; Lewin on Trusts, (2d ed.) 332; Story's Eq. Jur. 917, 921, 933, 937, 1268-1270; *Wren* v. *Curtin*, 11 Va. 381; *Insurance Co.* v. *Lynch*, 11 Paige, 520; Story on Bailments, sec. 620;

*Standard Brewery* v. *Malting Co.* 171 Ill. 607; 3 Am. & Eng. Ency. of Law, (2d ed.) sec. 3, pp. 747, 749, 750.

The makers of an official bond are insurers only where the statute or the terms of its condition make them debtors. Where the condition is for the faithful performance of duty, the relation is that of bailee or trustee only. *Wilson* v. *People*, 22 L. R. A. 449; *Railroad Co.* v. *Bartlett,* 120 Ill. 608; *State* v. *Copeland*, 96 Tenn. 296.

VANHOOREBEKE & LOUDEN, for appellee:

The acceptance of an office is presumed from exercising the duties and functions thereof. Mechem on Public Offices, sec. 252.

The written appointment to office adds nothing, and a verbal appointment is valid. The commission is merely evidence of the appointment. Mechem on Public Offices, secs. 115-117.

The failure to take oath is not indispensable. It is a mere incident. Mechem on Public Offices, sec. 255.

The bond of a *de facto* officer is binding on him and his sureties. Mechem on Public Offices, sec. 275.

The delivery of the bond of an officer to a third person is a good delivery. Mechem on Public Offices, sec. 279.

No formal acceptance of an officer's bond need be shown in order to recover on it. Nor is it necessary that there should be written evidence of the acceptance and approval in order to bind the sureties. Parol evidence is admissible to show its approval. *Bank* v. *Dandridge*, 12 Wheat. 64; 17 Am. & Eng. Ency. of Law, 64.

The fact of the possession of the bond, though not approved, is held to be a sufficient delivery and acceptance. *Bank* v. *Chickering*, 3 Pick. 335; 17 Am. & Eng. Ency. of Law, 64.

A bond takes effect from the date of its delivery. *Leeper* v. *Hersman*, 58 Ill. 218.

The fact that the officer acted and was recognized as such is sufficient evidence of the acceptance of the bond

and the liability of the sureties for the non-performance of the officer's duties. *Bank* v. *Dandridge*, 12 Wheat. 64.

If an officer whose duty it is to receive and approve the bond accepts it, it is *prima facie* good. *Shaw* v. *Havekluft*, 21 Ill. 127.

Parol acceptance of an official bond may be shown, and is competent. 17 Am. & Eng. Ency. of Law, 64.

A bond is binding on the principal and sureties though no approval is marked on it. The acceptance and approval may be proved by parol. *Bartlett* v. *Board of Education*, 59 Ill. 364.

The approval of the bond does not concern the sureties. It is a mere matter of public concern, and a failure to approve, or a defective approval, or, in fact, no approval at all, will not absolve the sureties. Mechem on Public Offices, secs. 311-313.

The facts that the officer was not duly elected; that the bond was not approved; that he was not sworn in; that he was not commissioned; that when he received the money he was not an officer, are not defenses available as to the liability upon his bond. These requirements are made for the security of the public and not for the benefit of the party and his sureties. *People* v. *Pace*, 57 Ill. App. 674; *Ashkum* v. *Lake*, 12 id. 25; *Albee* v. *People*, 22 Ill. 533; *Green* v. *Wardwell*, 17 id. 278; *Arnott* v. *Friel*, 50 id. 174; *Shaw* v. *Havekluft*, 21 id. 127.

The officer and his sureties are estopped to deny the validity of the bond when he receives money by virtue of his office. *Coons* v. *People*, 76 Ill. 383; *People* v. *Pace*, 57 Ill. App. 677; Mechem on Public Offices, sec. 296; *Logan* v. *Taylor*, 130 Ill. 412.

The sureties of an officer upon his official bond, conditioned for the faithful performance of the duties of the officer, are liable for all duties imposed upon him which come within the scope of his office, whether required by laws enacted before or after the execution of the bond; and the statute in force constitutes a contract between

the officer, his sureties and the public. *Freudenstein* v. *McNier,* 81 Ill. 208; *Governor* v. *Ridgway,* 12 id. 14.

The sureties are liable for acts of their principal, by virtue of his office, during the term or while exercising the functions thereof pursuant to law. *People* v. *Foster,* 133 Ill. 496.

If money comes to the hands of the officer and he fails to pay it out, he and his sureties are liable. *Smith* v. *Peoria County,* 59 Ill. 412; 2 Am. & Eng. Ency. of Law, p. 466.

A public officer, by virtue of the bond and law which becomes a part of the bond, whenever he binds himself to perform the duties of his office, without exception becomes an insurer of the fund. *Boyden* v. *United States,* 13 Wall. 17; *The Harriman,* 9 id. 161; *United States* v. *Dashiel,* 71 U. S. 182; *United States* v. *Prescott,* 44 id. 578; *Muzzy* v. *Shattuck,* 1 Denio, 233; *Commonwealth* v. *County,* 3 Pa. St. 372; *State* v. *Harper,* 6 Ohio St. 607; *People* v. *Barnwell,* 41 Ill. App. 624; Mechem on Public Offices, secs. 298-300, 302; *Thompson* v. *Board of Trustees,* 30 Ill. 101.

Officers charged with the custody of public funds are held to the same liability as a bank which receives deposits. They become debtors from the receipt of the money, and the loss of the fund by robbery is no excuse for non-payment. *Bank* v. *Hughes,* 17 Wend. 100.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

The errors, assigned upon the record by the appellant, relate to the admission of evidence in the trial below, and to the holding and refusal of the propositions of law asked by the parties.

*First*—The first class of objections, made by the appellant to the action of the court below, relates to the execution of the bond sued upon. It is said by the appellant, that there was no proof of the signatures to the bond; and section 65 of the act in regard to administration of estates is referred to, as showing that it was nec-

essary to prove the handwriting of the signatures to the bond. Such proof was unnecessary here, for the reason that section 1 of chapter 103 of the Revised Statutes in regard to official bonds provides that such bonds shall be "acknowledged before some officer authorized by law to take acknowledgments of instruments under seal," and that such acknowledgments shall be deemed and taken as *prima facie* evidence, that the instrument was signed, sealed and acknowledged in the manner therein set forth; and it is therein provided, that such acknowledgments shall have the same force and effect as evidence in all legal proceedings, as that given to deeds of conveyance of real estate. The bond, here, was acknowledged, and no proof was introduced by appellant to overcome the *prima facie* proof of execution made by such acknowledgment.

The objection is also made in the argument of counsel, that a mere certified copy of the bond was offered without proof of the loss of the original. The certified copy was not objected to upon this specific ground when it was offered upon the trial below, but upon other grounds hereinafter stated. For this reason the objection comes too late. But, independently of this consideration, section 7 of chapter 124 of the Revised Statutes in reference to the Secretary of State provides, that copies of all bonds, legally deposited in the office of the Secretary of State, when certified by him and authenticated by his seal of office, shall be received in evidence in the same manner, and with the like effect, as the originals. The bond here was so certified and authenticated as required by the statute, and, therefore, the certified copy was properly received in evidence.

Objection was made to the introduction of the bond, upon the alleged grounds that it was not approved by the penitentiary commissioners, or the Governor, and that it was not delivered in the lifetime of Ramsay. Section 8 of chapter 108 of the Revised Statutes in rela-

tion to the penitentiary provides, that, "the warden, before entering upon the duties of his office, shall take and subscribe the oath or affirmation prescribed by section 25, article 5, of the constitution of this State. And he shall also enter into a bond to the People of the State of Illinois in the penal sum of $50,000.00, with good and sufficient sureties to be approved by the Governor and by the said commissioners, or a majority of them, conditioned for the faithful performance of the several duties, which now are, or may hereafter be, required of him by law, which said bond and oath or affirmation shall be deposited in the office of Secretary of State."

So far as the approval of the bond by the penitentiary commissioners is concerned, it is marked "approved" upon the face of it by the three commissioners, E. C. Kramer, W. V. Choisser and John J. Schneider. It is not shown, however, that it was approved by the Governor. But this makes no difference with the validity of the bond, so far as the sureties are concerned. The requirement, that an official bond shall be approved by some representative of the government, is for the purpose of furnishing some means, by which the public may be assured that the bond tendered is sufficient, and is properly executed. The duty of thus approving the bond is a duty, which is due to the public, and not to the principal in the bond, or to his sureties. It follows, "that, where, by virtue of the bond, the officer has been inducted to the office, his sureties cannot escape liability for his defaults, because the bond was not approved by the proper officer, or was not approved at all." (Mechem's Public Offices and Officers, secs. 311-313; *Green* v. *Wardwell,* 17 Ill. 278.) Baker assumed and entered upon the duties of warden of the penitentiary under the bond, executed by him on February 15, 1893, and, therefore, Ramsay, as one of his sureties, could not escape liability for Baker's defaults, because of the non-approval of the bond by the Governor. The same is true of Ramsay's estate. The

proof shows, that the bond was approved by the com-
missioners of the penitentiary, to whom it was presented
soon after its execution, and that it was at once sent to
Springfield to the Secretary of State. When it was thus
approved, and deposited in the office of the Secretary of
State, as required by law, the presumption is, that there
was a delivery of it. It is true, that the file-mark upon
the original bond in the office of the Secretary of State
bears date January 9, 1895, a date subsequent to the death
of Ramsay; but there is nothing in the statute, which
requires the date of the filing of the bond to be endorsed
upon it by the Secretary.

No formal acceptance of an official bond is required,
in order to justify a recovery upon it against the sure-
ties, nor is it necessary that there should be written evi-
dence of its acceptance and approval, in order to bind
the sureties. Parol evidence is admissible to show its
approval. (17 Am. & Eng. Ency. of Law,—1st ed.—p. 64;
*Bank of United States* v. *Dandridge*, 12 Wheat. 64; *Bartlett*
v. *Board of Education*, 59 Ill. 364). Where an official bond
is executed and delivered to the proper representative of
the government, it becomes obligatory upon the parties
signing it, unless it is disapproved by such representa-
tive. The latter's mere non-action does not deprive the
officer of the power to act as such. So, here, Baker, as
warden, was not deprived of the power to act, merely
because of the non-action of the Governor in the matter
of the approval of his bond. If the Governor and peni-
tentiary commissioners were not satisfied with the sure-
ties upon the bond, they should have disapproved the
bond, so that other sureties might be obtained. If this
was not done, the bond became binding as an obligation
to secure the rights of the public, so far as the sureties
signing it were concerned, from the moment of its deliv-
ery, as required by statute. The fact of the possession
of the bond by the commissioners, even though it was
not approved, amounted to a sufficient delivery and ac-

ceptance. (17 Am. & Eng. Ency. of Law,—1st ed.—p. 64). A bond takes effect from the date of its delivery, and if an officer, whose duty it is to receive and approve it, accepts it, it is *prima facie* good. (*Leeper* v. *Hersman,* 58 Ill. 218; *Shaw* v. *Havekluft,* 21 id. 127). The fact, that the officer acted, and was recognized as such, is sufficient evidence of the acceptance of the bond, and of the liability of the sureties for the non-performance of the officer's duties. (*Bank of United States* v. *Dandridge, supra*). A parol acceptance of it is competent and may be shown. (*Bartlett* v. *Board of Education, supra*). In the *Bartlett case*, where the board of education elected a treasurer and required him to give bond, which he did with security, and it was received by the board and acted upon by the parties, it was held that there was a sufficient approval of it without any endorsement thereof on the bond, or any entry thereof on their records; that such acts implied an approval, and that the provision of the statute, requiring an approval, was merely directory.

We are, therefore, of the opinion that there was a proper execution, delivery, acceptance and approval of the bond, so as to make it binding upon the parties signing it.

*Second*—The question, urged on our attention by the appellant, and raised by the propositions held for the appellee and refused for the appellant, is the question, whether or not Baker's liability under the bond sued upon was that of a mere bailee, or whether he was liable as insurer.

The proof is clear that he deposited money, belonging to the State, in the bank of Seiter & Co. at Lebanon, one hundred miles or more distant from the penitentiary at Chester. It is proven clearly, that he had in this bank the sum of $11,750.00, being the amount of the present claim, when he retired from the office of warden of the penitentiary. It is claimed on the part of the appellant, that the bank of Seiter & Co. was reputed to be solvent,

and that Baker was guilty of no negligence in placing this fund in that bank.   Upon the theory that he was a mere bailee, he was only required to exercise such ordinary care in the preservation and custody of the fund, as a prudent man would take of his own property. (*Russell* v. *Koehler*, 66 Ill. 459).   The contention, that Baker's liability was merely that of a bailee, is based largely upon the interpretation given by appellant's counsel to the language of the bond.

The condition of the bond is that, "if the said James D. Baker shall faithfully perform his duties as such warden, then this obligation to be void," etc.   Stress is laid upon the fact, that the condition of the bond, in addition to requiring the principal therein to faithfully perform his duties as warden, does not also require him to promptly pay over, and account for all public funds, coming into his hands.   It is said that, if, according to the terms of the bond, he had agreed to pay over all public funds coming into his hands, then he might be held liable to pay over the sum, even though his ability to do so was rendered impossible by events over which he had no control, but that, under the language of the bond as it actually is, he was only required to perform his duties to the extent of taking care of such public funds in the same manner, as a bailee would be required under the law to care for the same.

It is true, that the language of the bond here sued upon is not as full and complete, as the language used in section 8 of the Penitentiary act.   By the terms of section 8, the warden is to enter into a bond, "conditioned for the faithful performance of the several duties, which now are, or may hereafter be, required of him by law." But we are of the opinion, that the language of the bond must be construed to have the same meaning, as though the broader language of section 8 had been used.   The sureties of an officer upon his official bond, conditioned for the faithful performance of the duties of the office,

are liable for all duties imposed upon him, which come within the scope of his office, whether required by laws enacted before or after the execution of the bond; and the statute in force, when the bond is executed, constitutes a contract between the officer, his sureties and the public. (*Governor of Illinois* v. *Ridgway*, 12 Ill. 14; *Compher* v. *People*, id. 290; *Freudenstein* v. *McNier*, 81 id. 208). Therefore, the statute must be looked at in order to determine what the duties of the warden were, inasmuch as the statute upon this subject entered into and formed a part of the bond itself, as much as though its terms were therein expressed.

The statute herein referred to, as the Penitentiary act, is the act of 1871 in relation to the penitentiary at Joliet; but on May 24, 1877, the legislature passed an act in reference to the Southern Illinois Penitentiary, the 14th section of which provides as follows: "In order that uniformity may prevail in the penitentiary system of this State, all laws and regulations now in force, for the government and management of the penitentiary at Joliet, shall hereby, so far as practicable, apply to the government and management of said 'Illinois Southern Penitentiary.'" (3 Starr & Curt. Ann. Stat.—2d ed.—pp. 2941, 2953). Section 19 of the act of 1871 provides, that "the warden shall attend to the fiscal concerns of the penitentiary, under the direction of said commissioners, and shall use his best endeavors to defray all the expenses of the penitentiary by the labor of the convicts; he shall superintend the labor of the convicts when employed in manufacturing or other work on behalf of the State, and shall act under the direction of said commissioners in making contracts for the employment of the labor of the convicts, and for furnishing the necessary supplies for their support, and in purchasing such raw material as may be required for manufacture by convict labor, and in taking charge of the articles so manufactured, and selling and disposing of the same for the benefit of the

State."  Section 20 provides, that "he shall render to
said commissioners on the first day of each month a full
and accurate statement of all moneys received by him
and all sums of money expended by him during the pre-
ceding month, showing on what account received and
expended, and shall accompany said report with proper
vouchers for all such expenditures; which report shall
be verified by the oath of the warden."

Section 35 provides, that "the said warden, under the
direction of the commissioners, shall be the custodian
of all funds belonging to the said penitentiary, whether
arising from the avails of the labor of the convicts, the
sales of manufactured articles, or appropriations made
by the General Assembly, or otherwise."  (Ibid. pp. 2946,
2951).  Thus, by the terms of the statute itself, the war-
den of the penitentiary is required to attend to the fiscal
concerns thereof, and is made custodian of all funds be-
longing thereto.  By force of the statute governing the
subject, the warden becomes in effect the debtor of the
public.  His liability being absolute and like that of other
debtors, he is not relieved from liability, even though he
is so unfortunate as to lose money deposited by him in
a bank which he supposes to be solvent, but which turns
out to be insolvent.  In other words, he is not a mere
bailee, and, therefore, cannot call upon the public to bear
the loss.  (Mechem's Public Offices and Officers, secs. 297-
302, inclusive).

A public officer "is liable upon his bond for the loss
of public funds, deposited by him in a bank and lost
through its failure, though the bank was reputed solvent,
and such deposit was necessary for the safety of the
funds."  (Mechem's Public Offices and Officers, sec. 302;
*State* v. *Moore*, 74 Mo. 413; *United States* v. *Prescott*, 3 How.
578).  In other words, a public officer, when he executes
a bond binding himself to perform the duties of his of-
fice, becomes insurer of the public funds coming into his
hands, by virtue of the bond and the law which becomes

a part of the bond. (*Boyden* v. *United States,* 13 Wall. 17; *The Harriman,* 9 id. 161; *United States* v. *Dashiel,* 71 U. S. 182; *United States* v. *Prescott, supra; Commonwealth* v. *Comly,* 3 Pa. St. 372; *Muzzy* v. *Shattuck,* 1 Denio, 233; *State* v. *Harper,* 6 Ohio St. 607; Mechem's Public Offices and Officers, sec. 298-302).

This doctrine prevails in the State of Illinois. (*Thompson* v. *Board of Trustees,* 30 Ill. 99; *Swift* v. *Trustees of Schools,* 189 id. 584; *Oeltjen* v. *People,* 160 id. 409). In *Thompson* v. *Board of Trustees, supra,* which was an action brought by the board of trustees of a township upon the bond of the township treasurer, it was held that township treasurers, under our statute, are made insurers of the funds coming to their possession, and that nothing can relieve them from their obligation to safely keep and pay over such funds but the act of God, or of the public enemy. In the latter case it was said (p. 101): "The fact, that the township treasurer is required to receive money, and enter it in his cash-book, implies, without any other special regulation, that he is to keep it, and being required to keep it, it follows he is to keep it safely. This is one of the duties of his office he has undertaken faithfully to discharge. Another duty, no less imperative, is that he will deliver to his successor in office all moneys in his hands as such township treasurer, which he could not do, if he suffered it to be lost out of his hands, or it should be so lost by any accident. The undertaking is, that the money shall be in his hands. These duties he has undertaken to perform unconditionally.  *  *  *  We cannot discover a shade of difference between this and the case of *United States* v. *Prescott,* 3 How. 578.  *  *  *  As in that case, so here is an undertaking safely to keep the money by the very force of the language of the condition of the bond.  *  *  *  In no sense is this a case of bailment. The liability of the treasurer arises out of his official bond. He has made, by that bond, an express contract with the trustees, that he will keep safely the moneys which shall

come to his hands." So, in the case at bar, under a stat-
ute, which provides that the warden shall be custodian
of all funds belonging to the penitentiary, and shall
render to the commissioners monthly a statement of all
moneys received by him, and all moneys expended by
him, the implication is that he is to keep such moneys,
and as he is required to keep them, it follows that he
must keep them safely.

In *Swift* v. *Trustees of Schools, supra,* it was held that
one, who accepts the office of township treasurer, takes
upon himself the duty of safely keeping the moneys of
the township, which come into his hands, and of disburs-
ing them pursuant to law, and that he and his sureties
cannot be excused from making good a deficiency result-
ing from the failure of the bank, where the funds were
deposited, although he supposed the bank to be solvent.
In *Swift* v. *Trustees of Schools, supra,* the case of *Thompson*
v. *Board of Trustees, supra,* was referred to, and endorsed,
and quoted from. (*Muzzy* v. *Shattuck, supra; Commercial
Bank* v. *Hughes,* 17 Wend. 97).

Even, however, if Baker should be regarded as a mere
bailee, the proof in this case does not show that he exer-
cised the ordinary care imposed by the law upon a bailee.
The proof tends to show that Baker, who had been a
partner of Seiter, knew, when he placed the money of
the State in Seiter's bank, that the bank was, if not
actually insolvent, at any rate in an unsound condition.
There is testimony tending to show, that this money, and
other moneys of the State, were put into the hands of
Seiter for the purpose of preventing the failure of his
bank as long as possible. The evidence also tends to
show, that Baker was aware, that Seiter intended to
make an assignment some time before he did actually
make an assignment, and that, notwithstanding his
knowledge of the condition of the bank of Seiter & Co.,
he allowed the funds of the State to remain therein, and
took no steps, until it was too late, to withdraw them

therefrom. It being established beyond controversy that Baker received the money of the State for which the present claim is presented, and failed to turn it over to his successor, or to the commissioners of the penitentiary, the burden of proof was upon him, or his sureties, to show why he so failed to pay over the funds in his hands. Under the authorities, the fact that he had deposited it in an insolvent bank, is no excuse, even though the bank was reputed to be solvent.

Where a public officer gives a bond, under which he is allowed to receive moneys, and does actually receive them by virtue of his office, he and his sureties are estopped from denying the validity of such bond when sued for breach of its condition. It will be obligatory as a common law undertaking, unless prohibited by statute, or opposed to public policy. (*Coons* v. *People*, 76 Ill. 383; *Longan* v. *Taylor*, 130 id. 412; Mechem's Public Offices and Officers, sec. 296).

*Third*—Some other points are made by the appellant, as arising upon the refusal of propositions of law submitted, a few of which will be noticed. Much stress is laid by the appellant upon the fact of the alleged destruction of what is called the Ford bond, referred to in the statement preceding this opinion. When Baker was first appointed, he presented to the penitentiary commissioners at Springfield in the latter part of January, 1893, a bond, signed by himself, Ford, Seiter and Reuter. This bond was acknowledged by Seiter only. Baker explained to the commissioners, that Ramsay was absent from Springfield, and asked them to accept the bond temporarily, so that he could assume the duties of his office at once. The proof tends to show, that the bond was so accepted with the understanding that another would be given shortly thereafter, and, in less than thirty days, another bond, signed by Ramsay instead of Ford, and which is the bond here sued upon, was presented to the commissioners, and by them approved and sent to Spring-

field. Upon cross-examination, Ford testified that Baker told him that, shortly after he gave the new bond, this old bond had been destroyed. Whether it was destroyed or not is not clearly established, but it would make no difference, so far as the liability of the estate of Ramsay in this suit is concerned. The second bond, executed by Ramsay, and accepted and approved by the commissioners, was a good and valid bond as against Ramsay, irrespective of the question, what became of the temporary bond executed in the first place. Whether Ford did, or did not, give notice, under section 10 of the statute in regard to official bonds, (2 Starr & Curt. Ann. Stat.— 2d ed.—p. 2833), the fact is, that a new bond was given, and, under section 11 of the last named act, the sureties upon the new bond were liable for all the official delinquencies of Baker as warden, whether of omission or commission, which occurred after the approval of such new bond. The proof shows that the first transaction, which Baker, as warden, had with Seiter's bank occurred on July 15, 1893, several months after the giving of the bond signed by Ramsay. The official delinquency, with which Baker is charged in the present suit, was the failure to pay over the sum of $11,750.00, which he deposited in the bank of Seiter & Co., and, as this deposit was made long after February 15, 1893, when the bond here sued upon was executed, Ramsay and his estate became liable on such bond.

It is said that the commissioners of the penitentiary, who appointed Baker to the office of warden, were guilty of negligence, not only in permitting him to have money in his possession, which it was unnecessary to expend in carrying on and maintaining the penitentiary, but also in allowing him to deposit his money in the banking house of Seiter & Co. No error was committed in refusing the proposition of law, which embodied this idea, because "an officer, who has received money for and on account of his principal, cannot, in general, when called

upon to pay it over, defend upon the ground that it was money, which his principal had no right to obtain, procure or receive. And it is held that his sureties are equally estopped." (Mechem's Public Offices and Officers, sec. 295; *Lovingston* v. *Board of Trustees,* 99 Ill. 564). It is also well settled, that the sureties, in an action on an official bond, cannot be heard to say that some other officer has been negligent, or failed to perform some duty, and thus escape liability. (*Stern* v. *People,* 102 Ill. 540; *Campbell* v. *People,* 154 id. 595; *Spindler* v. *People,* id. 637). In *Stern* v. *People, supra,* we said (p. 550): "Statutory directions to public officers are given for the security and convenience of the government, and to regulate the conduct of its officers, but being directory, they form no part of the contract with the surety, and hence sureties on bonds * * * cannot plead the negligence, or failure of public officers to require their principal to render an account, or to remove him for neglect, as required of such officers by law, as a defense to their liability, upon a subsequent breach of his bond."

A proposition of law, asked by the appellant, was also refused, holding that, by reason of delay in obtaining satisfaction of the debt sued for, the estate of Ramsay has been released from liability. All that need be said in reply to this contention is that, as a general principle, *laches* is not imputable to the government. This maxim is said by Judge Story to be founded upon "a great public policy." "The government can transact its business only through its agents; and its fiscal operations are so various, and its agencies so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses, if the doctrine of *laches* can be applied to its transactions. It would, in effect, work a repeal of all its securities." (Mechem's Public Offices and Officers, sec. 308; *United States* v. *Kirkpatrick,* 9 Wheat. 720). The claim here sued upon is sued in the name of the People of the State of Illinois for the use of the com-

missioners of the Southern Illinois Penitentiary, and the money sought to be recovered belongs to the government of Illinois.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*