(No. 21675.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. CHARLES J. WOLF, Plaintiff in Error.

*Opinion filed February 23, 1933—Rehearing denied April 12, 1933.*

DANIEL M. HEALY, and ODE L. RANKIN, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, GRENVILLE BEARDSLEY, and WILKIE HAM, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, Charles J. Wolf, was convicted in the criminal court of Cook county of embezzling $33,253.49 of the money and property of the Citizens State Bank of Melrose Park. The cause is here for review on three points: (1) Refusal of the court to grant plaintiff in error's motion to quash the indictment on the ground that the grand jury returning the same was illegally impaneled; (2) refusal on the part of the court to instruct the jury to find plaintiff in error not guilty; and (3) errors in rulings on the admissibility of evidence.

Plaintiff in error was president of the bank named in the indictment from the date of its organization, in 1906, until July 1, 1930. On August 14, 1929, he was elected treasurer of the Veterans Park District, a municipality organized under the Park District act. He filed his bond in the sum of $50,000, as required by an ordinance of the park district, and received moneys of the district amounting to $102,575, which he deposited in the Citizens State Bank of Melrose Park.

No evidence was offered by the defense. The evidence shows that between September, 1929, and June, 1930, plaintiff in error debited the account of the park district with certain sums of money, seven in number, and in most instances issued, as president of the bank, cashier's checks in like sums to certain payees. These debits aggregate $33,-253.49 and comprise the seven transactions on which the indictment is based.

It is urged, as a matter both of law and fact, that the evidence does not support the charge made in the indictment. As we have said, the charge is that plaintiff in error embezzled the funds of the bank. Seven transactions are produced to prove that charge. One is referred to in the briefs as "the Lynch mortgage." The facts concerning it, so far as shown by the record, are, that Thomas J. Lynch had executed notes and a trust deed, with the Chicago Title and Trust Company as trustee, which became the property of the bank and were carried in the real estate loans account. This account shows that the trust deed and notes were sold to plaintiff in error as trustee, though it does not disclose the date of the sale. It discloses, also, that a debit for $10,100, which was the amount of the Lynch notes plus interest, was on September 30, 1929, made against the park district. On that date, also, a like amount was credited to the real estate loans account in the bank, and on October 15, 1929, the trustee was directed to release the trust deed. It is evident that Lynch paid these notes but the evidence

does not show just when they were paid. Lynch died prior to the trial. The evidence showed no corresponding credit to the account of the park district, and conversations with plaintiff in error in evidence tend to establish that he appropriated the proceeds to his own use.

Another item of the charge against plaintiff in error was a debit against the park district dated September 30, 1929, and drawn in favor of the Bellwood Park District for the sum of $4000. It may be gathered from the evidence that this debit was for the purchase of bonds of the Bellwood Park District. What became of these bonds is not clear. The report of plaintiff in error, as treasurer of the park district for that period, does not disclose a corresponding credit to the park district.

A third item known as "National Bank of Republic bonds," totals $4943.66. This is shown by a debit against the funds of the park district, which were apparently used to pay the National Bank of the Republic for certain bonds. The report of plaintiff in error, as treasurer of the park district, does not show that these bonds were received by the park district.

So with the item known as the "R. E. Wilsey & Co." transaction. This was a debit against the park district for the sum of $5625, dated October 21, 1929, and a cashier's check was issued to R. E. Wilsey & Co. in payment for certain stocks. This cashier's check was marked as payment for stock purchased by the Veterans Park District. The report of plaintiff in error as treasurer does not show a credit of such stocks to the park district.

The fifth item, known as the "Foreman National Corporation transaction," was a debit against the park district dated October 31, 1929, in the sum of $4977.09. A cashier's check was issued for like amount payable to the Foreman National Corporation. No report was made by plaintiff in error, as treasurer of the park district, of the purchase of such securities for it.

Item 6 was a debit against the park district dated December 24, 1929, for $2036, and a cashier's check corresponding therewith showed that it was issued to one Sophia Ruchty on the sale of a mortgage and interest, and also that the mortgage and interest were purchased by the park district. Again no evidence appears in the report of plaintiff in error to the park district that he had purchased such a mortgage for it.

The seventh item was a debit against the park district account dated May 23, 1930, for $1571.74, in what was known as the Northern Trust Company transaction, and a cashier's check payable to the Northern Trust Company was issued and recited a purchase by the park district, though the subject matter of the purchase is not shown. Again the report of the plaintiff in error, as treasurer of the park district, fails to disclose any credit to the park district of securities or any other credit in that amount.

Plaintiff in error argues that these facts show, as a matter of law, that the money was not the money of the bank but was the money of the Veterans Park District. Plaintiff in error was treasurer of the park district. As such he was the insurer of the safety of the funds of the park district. In the theory of the law the money was in his personal possession. He had a right to deposit it in a bank or withdraw it, as he saw fit. He was to be accountable only to the district for it, and in the absence of proof that his duties required that he deposit it in a certain bank or that such funds could be drawn only on a certain specified order, he was at liberty to place it in whatever bank he chose and draw it therefrom on whatever kind of debit he should select. His liability was entirely to the district. (*Estate of Ramsay* v. *People*, 197 Ill. 572.) The books of the bank showed regular credits to it for all amounts withdrawn by plaintiff in error from the park district account. All debits against the park district were drawn by the treasurer, who had legal authority to make such debits. The

bank, of course, lost nothing in the transaction and was in no way liable to the park district to restore the amount of those debits.

Counsel call attention to the established rule that money deposited in a bank becomes the money of the bank and no longer belongs to the depositor. While the bank owned the specific money deposited by the park district the district had a right to withdraw a like amount and the bank was bound to pay such like amount, and when an officer of the district with power to withdraw the district's funds did so, the funds withdrawn belonged to the district and the bank had received its equivalent in credit. The bank therefore lost nothing by the transaction. The funds embezzled, if funds were embezzled, were the funds of the park district and not of the bank. That this is so seems too clear to require extended argument.

Counsel for the People argue, however, that as to the Lynch trust deed and notes, in any event, plaintiff in error was guilty of embezzling the money of the bank, because, they say, the trust deed and notes were paid by Lynch many months before plaintiff in error became treasurer of the park district and custodian of its funds. The record does not, however, show when the Lynch trust deed and notes were paid. As we have said, Lynch died prior to the trial, and the only evidence in the record is a stamp on the trust deed, "Paid 8/5/29." The meaning of that notation or who placed it there was not explained. It does appear that the trustee received orders to release the trust deed on October 15 and that the real estate loans account of the bank showed this trust deed sold to the plaintiff in error, as trustee, on September 29. The first deposit of park district funds was on September 21, 1929. There is no evidence of any demand upon him to turn into the bank the money arising from the payment of the Lynch trust deed and notes, or that he did not have a right to receive it, as

president of the bank, if it was paid before September 29, 1930, the date on which credit for the amount is shown on the books of the bank. The bank having received the amount due on the trust deed and notes has lost nothing. The evidence as to this item does not sustain the charge that plaintiff in error embezzled funds of the bank. Such is the charge in the indictment.

Counsel also argue that the fact shown that plaintiff in error's mother-in-law gave a mortgage, the proceeds of which, to the amount of the debits against the park district, were by the bank deposited to the credit of the park district, proves embezzlement of the funds of the bank. On the contrary, the act of crediting the account of the park district with such proceeds shows the money taken to have belonged to the district. The bank was in no way liable for the defalcation of the park district treasurer, and neither the fact that the treasurer was also president of the bank, nor the fact that the loan for replacement was secured from the bank, aids the charge made here that the funds taken belonged to the bank.

Plaintiff in error's counsel, at the close of the People's case, moved the court to instruct the jury to return a verdict of not guilty and the court denied that motion, though it instructed the jury that plaintiff in error, as treasurer of the park district, had charge of the funds and had at all times power and authority to withdraw any or all of the funds from the bank, and when so withdrawn the money was the money of the park district, and that whatever the treasurer did with the money of the park district had no bearing on the case. After refusing to instruct the jury to return a verdict of not guilty and giving the above instruction correctly stating the law, the court of its own motion also instructed the jury that it was their duty to find from the evidence, as a question of fact, whether the money in question was the money of the Citizens State Bank of Melrose Park or the money of the Veterans Park

District. Under the undisputed facts in this case these instructions were inconsistent and irreconcilable and may well have led the jury into confusion. The guilt of .plaintiff in error under the uncontroverted facts was purely a question of law and the court should have so treated it. The proof showed plaintiff in error was not guilty of the crime charged in the indictment, and it was the duty of the court to grant his motion and instruct the jury that as a matter of law plaintiff in error is not guilty of the charges made.

No further assignment of error need be considered.

The judgment of the criminal court of Cook county is reversed.

*Judgment reversed.*